Jocilyn B. Oyler, SC# 22229
Legal Counsel
Kansas Department of Corrections
714 SW Jackson St, 2nd Floor
Topeka, KS 66603
Tel: 785.940.1124
Fax: 785.296.0014
Jocilyn.Oyler1@ks.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **SHAIDEN BLAKE** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Case No. 21-CV-3046-SAC |
| v. | ) | |
| | ) | |
| **WALLACE, et al** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MARTINEZ REPORT

**COMES NOW**, counsel undersigned for the Kansas Department of Corrections as an Interested Party (KDOC), and in accordance with the Court's Order [Doc. #7, filed February 3, 2022] submits the following Martinez Report as an aid to the Court in further screening the merits of Shaiden Blake's (Resident Blake) claims. This report is based upon affidavit testimony and official internal facility documentation available at the time of preparation. KDOC reserves the right to seek leave to supplement this report in the unlikely event additional evidence is discovered or becomes available

## Introduction

Resident Blake has filed a pro se complaint pursuant to U.S.C. §1983. He claims a denial of his rights under the Fourth Amendment, Eight Amendment and Fourteenth Amendment. He

seeks compensatory and punitive damages.  In support of his claims(s), Plaintiff alleges the following: [DOC.#7-1, filed February 12, 2021]:

a.   Resident Blake was forced into a restraint chair. [DOC. #7]

b.   Resident Blake was forced to receive medical treatment he did not want; [DOC.#7]

c.   He was given injection of morphine and fentanyl against his wishes; [DOC.#7]

d.   He was forced to go to the hospital, again against his wishes; [DOC.#7]

**Summary of Investigation**

A review of the relevant facility documentation, along with interviews of witnesses and persons knowledgeable about Plaintiff's claims have been compiled, and now are submitted to the Court as Exhibits, either attached hereto or filed under seal, and incorporated as if fully set forth herein.  Based upon the foregoing inquiry, the findings and conclusions are rendered below and cited to each supporting Exhibit.

## INDEX OF EXHIBITS

| Exhibit | Description |
|---|---|
| A | KASPER (Kansas Adult Supervised Population Electronic Repository) Information Sheet |
| B | Lt Taylor Affidavit |
| C | Use of Force Report |
| D | Mobile Restraint Chair Restrictions G.O. 09-132 |
| E | IMPP 16-104d Consent and Refusal of Health Care |
| F | DVD recording of Restraint Chair interaction |

**FINDINGS OF THE KDOC**

**The Parties and Witnesses**

1. Shaiden Blake, #96323 (Blake) is a Resident currently in the custody of the Kansas Department of Corrections and currently incarcerated at El Dorado Correctional Facility in El Dorado, Kansas. He has convictions for Conspiracy to Murder 1st Degree and Murder in the 2nd Degree (Intentional). He is 50 years old. During his KDOC career, he has had 48 Disciplinary Reports. (Exhibit A,)

**Chronology of Events**

2. Resident Blake was committed into the custody of the Kansas Department of Corrections (KDOC) on March 3, 2010. (Exhibit A).

3. On September 3, 2020, CSI Sage Gorman was escorting the medication pass in Cellhouse A2 at approximately 1915 hours. (Exhibit C)

4. When Gorman arrived at Plaintiff's cell, A2-149, he immediately observed that Plaintiff was behaving in a strange manner. (Exhibit C )

5. Plaintiff had been yelling out his door for the entire shift but started to speak quietly and in a slurred manner. Plaintiff stated he had some pressure in his chest and did not feel well.

6. CSI Gorman observed Plaintiff's face drooping, his slurred speech, and noticed that Plaintiff had difficulty maintaining balance. (Exhibit C )

7. Plaintiff's cellmate helped him sit on the toilet while CSI Gorman called RN Christian. (Exhibit C )

8. After an initial observation, RN Christian determined she needed to assess Plaintiff further. (Exhibit C)

9. CSI Robert Wallace assisted CSI Gorman in escorting Plaintiff in belly chains and a wheelchair to the A1 Clinic Room for assessment. (Exhibit C )

10. RN Christian contacted the on-call doctor. They determined it was appropriate for Blake to go to the hospital. (Exhibit C)

11. Plaintiff verbally refused to go to the hospital. He insisted that he be given a medical care refusal form. (Exhibit C) (Exhibit D)

12. Staff informed him that due to their belief that there was an immediate need for treatment of a potentially life-threatening condition, his informed consent was not a requirement. (Exhibit C) (Exhibit D)

13. Plaintiff stated that he would fight and resist transport to the hospital. (Exhibit C)

14. Based on Plaintiff's statements and actions, it was appropriate transport Plaintiff in the Restraint Chair based on his mental state. (Exhibit C) (Exhibit B)

15. Use of the Restraint Chair is documented in General Order 09-132. (Exhibit D)

16. While waiting for the West Side Escort Team, Plaintiff began to argue with CSI Wallace, and attempted to get down from the examination table. Resident Blake was combative and hostile. (Exhibit B)

17. The Restraint Chair was brought in to transport Resident Blake to the trauma room for further assessment. (Exhibit B)

18. General Order 09-132 dictates that a resident shall be recorded continually during the securing of resident in the restraint chair and during the duration of the placement. (Exhibit D)

19. Officer Josiah Nordquist recorded Plaintiff's placement in the restraint chair. (Exhibit C)

20. On the recording, Plaintiff continuously appeared agitated and argumentative. (Exhibit F)

21. Plaintiff repeatedly and loudly shouted to Cellhouse about the use of the restraint chair. (Exhibit F)

22. Plaintiff is also seen yelling at EDCF staff during the recording. (Exhibit F)

23. According to G.O. 9-132, the restraint chair shall be used only when a resident is physically abuse to staff or himself, combative or unruly. (Exhibit F)

24. The restraint chair shall be used only when conventional means of control are ineffective. (Exhibit F)

25. Several times, Plaintiff got off the examination table in the A1 Clinic Room, and staff had to physically place him back on the table. (Exhibit C)

26. A Use of Force Report was completed per General Order 09-132. (Exhibit F, Exhibit C)

27. Plaintiff was successfully moved to the trauma room for more thorough examination. (Exhibit F)

28. Plaintiff does not allege any permanent injuries in his complaint.

29. EMS staff administered the fentanyl and morphine shots to Plaintiff once they arrived. EDCF Staff did not administer any pain medication. (Exhibit F)

30. **SUMMARY AND CONCLUSION**

At no time, did EDCF appear to behave in a retaliatory manner.  EDCF's attempt to provide medical care to Plaintiff was reasonable given the fact that Plaintiff demonstrated physical signs of a stroke.  El Dorado EMS gave pain medication to Plaintiff with no input or assistance from EDCF Staff.

Respectfully Submitted,

/s/  Jocilyn B. Oyler
Jocilyn B. Oyler, SC# 22229
Legal Counsel
Kansas Department of Corrections
714 SW Jackson St, 2nd Floor
Topeka, KS 66603
Tel: 785.940.1124
Fax: 785.296.0014
Jocilyn.Oyler1@ks.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 21st day of June, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Attorney General's Office
120 S.W. 10th Ave.
Topeka, Kansas 66612-1597

Natasha Carter
Chief Legal Counsel
Kansas Department of Corrections
714 SW Jackson St., Suite 300
Topeka, Kansas 66603

I further certify I sent via United State Postal mail a copy of the foregoing, with exhibits A, B, C, D, E, F, on the 22nd of June, 2022.

Shaiden Blake

                                        /s/ Jocilyn B. Oyler
                                             Jocilyn B. Oyler