

**Kansas Department of Corrections**

# INTERNAL MANAGEMENT POLICY & PROCEDURE

**Applicability:**  _ ADULT Operations Only    _ JUVENILE Operations Only    **X** DEPARTMENT-WIDE

**IMPP #: 16-104D**  **PAGE #: 1 of 6**

**HEALTH CARE SERVICES: Consent and Refusal of Health Care Services**

**Original Date Issued:** 11-01-21    **Replaces IMPP Issued:** N/A    **CURRENT EFFECTIVE DATE:** 11-01-21

**Approved By:** _[signature]_, Secretary    **Next Scheduled Review:** 10/2024

## POLICY

Residents within the KDOC maintain their right to make informed decisions regarding health care, including the right to refuse care, and all examinations, treatments, and procedures are governed by informed consent practices as applicable in Kansas.

## DEFINITIONS

**Capacity:** Refers to the ability of a patient to make his or her own medical decisions. The capacitated resident has the ability to both understand information relevant to a medical decision and to appreciate the consequences of that decision. Residents are considered to be capacitated unless the physician or psychiatrist has assessed and documented otherwise.

**Continuous Quality Improvement Program:** A program that monitors and improves health care delivered in the facilities.

**Director of Health Care Compliance:** Acts as the administrative health authority for the Department. This position manages health care systems, directs the health care services model, and has final approval on all policies and procedures in the health care system.

**Health Care Staff:** Persons who are registered or licensed with a health care regulating agency to include, but not limited to physicians, nurses, psychiatrists, psychologists, and social workers.

**Health Services Administrator (H.S.A.):** The individual responsible for ensuring the organization and delivery of all levels of quality accessible health services in the facility. The H.S.A. works under the direction of the Regional Medical Director clinically and the Regional Vice President or designee administratively.

**Implied Consent:** The assumption that a person has given permission for an action, which is inferred from his or her actions, rather than expressly or explicitly provided.

**Informed Consent:** The agreement by a patient to a treatment, examination, or procedure after the patient receives the material facts about the nature, consequences, and risks of the proposed treatment, examination, or procedure; the alternatives to it, and the prognosis if the proposed action is not undertaken.

**Regional Medical Director:** The physician Medical Director of the contracted agency or organization responsible for the provision of health care services for the KDOC resident population. This position has full clinical autonomy and responsibility for the provision of clinical services within the KDOC.

**Qualified Behavioral Health Personnel:** Psychiatrists, physicians, behavioral health professionals and nurses who meet the educational and registration or licensure/certification criteria specified by their respective discipline to provide evaluation and care for the behavioral health needs of patients.

**PROCEDURES**

I. **Consent for Health Services**

    A. All examinations, treatments, and procedures are governed by informed consent practices as applicable in Kansas.

        1. Consent to Treatment:

            a. Consent to routine health examinations and or treatment is to be documented by the health care staff on a form approved by the Regional Medical Director for the purpose of authorizing routine health and or dental care. Each resident is to be requested to execute the consent to treatment form when the resident is received into the custody of the Secretary. Once executed, the form need not be executed again for subsequent routine health procedures.

            b. Routine treatment is to be documented by designated health care staff via entry in the designated location in the electronic health record.

            c. Verbal consent is to be obtained prior to any routine health examination that is conducted through a pelvic, digital, or other invasive procedure and is not to require execution of a consent form.

            d. Implied consent is assumed if a patient has requested health care in writing and does not verbally refuse routine recommended care.

        2. Informed Consent:

            a. Procedures and medications that require informed consent in the community setting are not to require documentation of informed consent within the KDOC healthcare setting.

            b. Informed Consent must include:

                (1) Discussion of specific procedures, services, testing, and medications to be provided and the purpose and or intent of their use.

                (2) Potential risks and benefits.

                (3) Alternatives to the service/treatment.

                (4) Consequences of not accepting the recommended services.

                (5) Opportunity for the patient to ask questions.

            c. Informed Consent must be obtained in the following instances:

                (1) Central line placement.

                (2) Blood transfusions.

                (3) Tooth extractions or oral surgery.

                (4) Scope procedures.

                (5) IVP or any procedure that requires injection of dye.

                (6) Surgery.

                (7) Psychotropic Medication.

   d. **Informed Consent is not required in the following situations:**

     (1) Life threatening circumstances whereby immediate intervention is required.

     (2) The patient as determined by the psychiatrist is at imminent danger of harm to self or others.

     (3) A resident does not have the capacity to understand the information given or the capacity to consent or refuse.

     (4) Public health matters.

   e. Informed Consent is to be documented on the "Informed Consent" form or in the Electronic Health Record (E.H.R.) template established by the contracted healthcare vendor.

   f. Upon completion, hard copy consent forms must be scanned into the electronic health record.

   g. Informed consent for surgery will be obtained by the off-site hospital or clinic during the routine pre-operative care. On site health care staff will provide the patient clarification and information required to make an informed decision.

## II.  JUVENILE: Obtaining Consent for Treatment and/or Health Services

  A. Pursuant to K.S.A. 38-2316, when the health or condition of a juvenile requires it and the juvenile has been placed in a juvenile correctional facility pursuant to K.S.A. 75-5206, the custodian or agent of the custodian is to be the personal representative for the purpose of consenting to disclosure of otherwise protected health information and have authority to consent to hospital, medical, surgical or dental conditions the court considers proper.

  B. In cases where the resident is under the age of 16, consent is to be obtained from the resident's parent, guardian, or some adult who has the obligation to care for the resident and make responsible decisions for him/her. In most instances this is the Superintendent of the facility.

   1. All attempts to contact the parent, guardian, or other responsible adult is to be fully documented and retained as a permanent part of the resident's health record.

   2. A minor 16 years of age or older, where no parent or guardian is immediately available, may give consent to the performance and furnishing of hospital, health, or surgical procedures.

  C. The consent for treatment is to be obtained in writing whenever possible.

   1. If obtaining written consent is not practical due to time or distance factors, the verbal consent of the resident's parent, guardian, or other responsible adult, in most instances the Superintendent, is to be documented by the person obtaining it.

    a. The written consent or documentation of verbal consent is to be retained as a permanent part of the resident's health record.

   2. Whoever obtains the consent is to immediately confirm it by a letter to the person giving the consent except when the consenting party is the Superintendent. The letter is to itemize all disclosures made and state that consent was given by the person who represented themselves as having the authority to give consent, specifying the method in which the consent was communicated (i.e., verbally via telephone, telegram, fax, email, etc.

    a. This effort is to be documented in the resident's health record and a copy of the

letter attached. The letter is to be sent by registered mail.

### III. Refusal of Healthcare Evaluations and Treatment

A. A resident's right to refuse healthcare is recognized and is to be an informed decision with the consequences explained to the resident.

B. **JUVENILE:** Except for such circumstances as are set forth in Section II., above, a resident's parent, guardian, or other responsible adult, in most cases the Superintendent, is to have the right to refuse health treatment for the resident.

C. Refusals are to be dealt with in the following manner:

1. A resident may refuse healthcare evaluations or treatment at the time it is offered. A blanket refusal for healthcare or mental health services is not permitted when a patient is admitted to the KDOC system or at any time during incarceration. Refusal of a health care service must be exercised by the patient at the time evaluation or treatment is offered.

2. If a resident refuses a health examination/service, he/she is to be asked to sign a refusal of treatment form as established by the contracted health services vendor.

3. If a resident refuses a health examination/service, and also refuses to sign the appropriate refusal form, healthcare staff is to indicate the resident's refusal on the form by entering the phrase "resident refused to sign" over the resident's signature block, and is to sign and date the form.

4. The signature of the healthcare staff member is to be witnessed by at least one other health care or custody staff person who heard the resident refuse the examination.

5. When a resident refuses to come to a scheduled health care appointment, security staff will be notified to bring the patient to the health services clinic. A face-to-face meeting with a physician, psychiatrist, PA, or APRN is required, and documentation will reflect that the benefits and risks of the proposed treatment have been explained and the patient has had the opportunity to address concerns and ask questions.

6. The resident will be asked to sign a release form or template in the E.H.R. as established by the contracted health services vendor when he/she has refused a healthcare evaluation or treatment. The form is to include the following:

    a. Description of the service being refused.

    b. Evidence that the patient has been made aware of any consequences to his/her mental health that may occur as a result of the refusal.

    c. Patient signature and date.

    d. Signature of the behavioral health staff witness and date.

7. The resident does not waive his/her right to subsequent treatment by refusing healthcare at any given time.

8. The resident may not be punished or disciplined for refusing healthcare services. However, in affording the resident's right to refuse health treatment, this policy does not     intend to imply that residents have a right to refuse to comply with the decision of the Warden/Superintendent and site medical director for placement in a facility infirmary or in restrictive housing for health reasons. Even after such placement the resident may refuse health treatment.

9. A resident will not be housed in general population until evaluated by a physician, midlevel practitioner and or psychiatric health care practitioner in situations whereby the resident's

        refusal of treatment may seriously jeopardize the resident's safety or the safety of others. The resident will be evaluated for the potential need to pursue emergency psychotropic medication or placement in a mental health unit.

    10.    The site medical director or designee is to counsel residents who refuse medical treatment when the refusal may seriously jeopardize the resident's health or safety or the health or safety of others. The patient will be counseled as to the consequences of refusing treatment and the healthcare practitioner is to document these efforts in the health record.

    11.    The site health care team may consider convening a multi-disciplinary team meeting to facilitate successful collaboration of disciplines in the effort to convince a resident to accept necessary healthcare.

    12.    The facility legal counsel is to be consulted in those instances when a resident refuses other than routine health treatment. The legal counsel is to advise the Warden/Superintendent concerning the facility's responsibility regarding the health treatment, including the possibility of seeking a court order to provide treatment.

        a.    If a resident's refusal of treatment approaches consideration for a court order, the Health Services Administrator is to notify the Director of Healthcare Compliance staff as well as other staff so designated by the contracted healthcare provider's chain of command.

        b.    If a resident refuses treatment for a suspected or diagnosed infectious/communicable disease, precautions are to be initiated in accordance with the provisions of IMPP 10-126D.

        c.    While a resident's refusal of treatment will not, of itself, result in disciplinary action, the refusal of health treatment for certain diseases and or conditions may require a management response, in accordance with IMPP 10-126D.

    13.    The Health Services Administrator is responsible to identify and investigate any system disincentives that may increase treatment refusals and explore possible alternatives that reduce or eliminate conflicts. These issues are addressed with the Warden/Superintendent or designee through medical administrative meetings. Refusals are tracked and trended and included in the Continuous Quality Improvement Program.

D.    Medication Refusal for chronic or critical medical or psychotropic medication:

    1.    Healthcare staff document refusals on the medication administration record.

    2.    Healthcare staff report medication non-compliance to the medical or psychiatric provider after the third missed dose (consecutive or otherwise).

    3.    The Site Medical Director/designee and or the psychiatric provider will provide directives that require notification when a patient misses or refuses one dose.

    4.    Healthcare staff counsel the patient regarding the benefits of the prescribed medication as well as the potential risks associated with refusal of medication.

## IV.    Psychotropic Medication

A.    Psychotropic Medication and Informed Consent

    1.    Patients will be asked to sign a Psychotropic Medication Informed Consent form/E.H.R. template developed by the contracted healthcare provider prior to beginning psychotropic medication.

        a.    The patient is to be advised of the potential benefits, side effects, risks, alternatives to psychotropic medication and prognosis if treatment is not initiated.

   b.  Language of the consent form is understandable to the patient.

   c.  Informed consent is obtained before the patient begins psychotropic medication and at any time a new medication is ordered.

   d.  The informed consent becomes inactive when a patient withdraws consent either verbally or in writing and when the orders for the medication are discontinued.

   e.  Discussion of risks, benefits, and alternatives to psychotropic medication must be documented in the psychiatric progress note.

  B. Informed consent for psychotropic medication is not required in emergent situations whereby the patient presents an immediate danger to self or others and when less intrusive or restrictive interventions are not available or would not be effective.

## V. Monitoring of Non-compliant Patients

  A. Patients with serious mental illness who have refused treatment are to continue to be monitored by behavioral health staff.

   1. Patients diagnosed with psychosis, thought disorder, bipolar disorder, self-mutilation, grave disability, or other serious symptoms, who refuse treatment will not be discharged from the behavioral health caseload. These patients remain on the caseload for the remainder of their incarceration regardless of their refusal of treatment.

    a. The qualified behavioral health professionals will continue attempts to engage the patient and secure his/her acceptance of appropriate behavioral health services.

    b. Efforts to engage and monitor the patient will be documented in the health record.

    c. Behavioral health staff will provide supportive documentation regarding the patient's status received from medical, security, unit team, educational, clergy, activity therapy, and other programming staff.

**NOTE:** The policy and procedures set forth herein are intended to establish directives and guidelines for staff, residents, offenders, and those entities that are contractually bound to adhere to them. They are not intended to establish State created liberty interests for employees, residents, offenders, or an independent duty owed by the Department of Corrections to employees, residents, offenders, or third parties. Similarly, those references to the standards of various accrediting entities as may be contained within this document are included solely to manifest the commonality of purpose and direction as shared by the content of the document and the content of the referenced standards. Any such references within this document neither imply accredited status by a Departmental facility or organizational unit, nor indicate compliance with the standards so cited. The policy and procedures contained within this document are intended to be compliant with all applicable statutes and/or regulatory requirements of the Federal Government and the state of Kansas. This policy and procedure is not intended to establish or create new constitutional rights or to enlarge or expand upon existing constitutional rights or duties.

**REPORTS REQUIRED**
None.

**REFERENCES**
NCCHC P-G-05
ACI 5-6C-4397
K.S.A. 38-2316, 75-5206
IMPP 10-126D

**HISTORY**
11-01-21 Original

**ATTACHMENTS**
None.