In The United States District Court for Kansas

Shaidon Blake
    Plaintiff
v.                        Case No. 5:21-cv-03046-SAC
Wallace, et. al.

Response To Defendants Opposition To Compel Discovery

    Here comes Shaidon Blake pro se, in response to defendants opposition to compel discovery. The plaintiff presents the following;

1. The plaintiff has reviewed the cam corder video footage of the use of force and still declares the use of force was not justified and was used only as a means to force plaintiff to be transported to the hospital after refusing.

2. In defense exhibit "E", IMPP 16-104D Health Care Services: Consent and Refusal of Health Care Services, the defense highlights under situations where informed consent is not required. "Life threatening circumstances whereby immediate intervention is required." This provision did not apply and to invoke it, abused the rule. The video, the defendants placed in exhibit shows a very aware plaintiff and the fact there was no need for "immediate intervention" was obvious. Which calls into question the next highlighted portion of the IMPP the defense uses to justify the unneccessary excessive use of force.

3. "A resident does not have the capasity to understand the information given or the capasity to consent or refuse. Again, the video refutes any claim to apply this section of the provision.

4. The plaintiff was ordered to be restrained for the sole purpose of being transported to the hospital, not due to violent hostility as stated in reports. This is not protocol, and constitutes excessive use of force (see def. ext video). Plaintiff clearly scared and states because of fear of being beat while restrained. Not kicking like preparer of the Martinez Report stated and as both defendants Gorman and Chastain states in official documents.

5. Defendant Gorman stated to me while recently on my unit that when he stated in report "He had to hold or restrain plaintiffs legs to prevent him from kicking" that it was "only due to protocol and not because the plaintiff was kicking." He also stated he made the KDOC lawyer aware of this, who disregarded the truth and spun a web of deception in the Martinez Report when she stated the use of force was necessary due to the resistance by kicking, threats of fights and hopping off table hostil, which clearly was not depicted in defense exhibit, the video of use of force.

6. No stroke was obvious because plaintiff was engaged in a specific conversation exposing past gross misdeeds of the officer in control of the hand held camera, who a couple of months earlier made horrible racist jokes that the plaintiff reported. This shows an awareness that is not possible during a stroke.

7. The plaintiff on video was asked was he hurting who clearly replied "no". This response coupled with his refusal and request to sign a medical refusal, makes the forced

hospital trip and the administration of any medication for pain unnecessary, excessive, and against the plaintiffs will. A cognazice test was performed which also gave no indication of a need for "immediate Intervention"

8. The actual reason to justify the use of force and restraint chair is not adequate to call for a use of force because on video defendant Wallace states "If I had thought you were gonna do something, you would have been on the ground right away". This defendant in his use of force report states, the plaintiff did not resist the placement of the chair.

9. Plaintiff clearly states "Why are you restraining me, Im not kicking nobody" and "you dont restrain no one to go to the hospital". This makes what was the nurse stated was wrong before, not the case because the video shows no distress.

10. Once nurse Christian knew plaintiff suffers from anxiety, it should have changed her assessment. She was clearly in control, she states to plaintiff "Calm down so I can get you where you need to go." This was due to the clear signs of fear not aggression.

11. The defense exhibit IMPP 16-104D states "Refusals are to be dealt with in the following manner: (10) The site medical director is to counsel resident who refuse medical treatment when the refusal may seriously jeopardize the residents health or safety. The patient will be counseled as to the consequences of refusing treatment, and the health care practitioner is to document these efforts in the health record." None of this was

done and no where does it state use of force by restraint chair is an option just because someone refuse treatment. (13) Under provision states "The facility legal counsel is to be consulted in those instances when a resident refuse other than routine health treatment." This can not be avoided and must be documented. Plaintiff requests this documentation.

12. The intentional deception in the Martinez Report is to justify the use of the Restraint Chair, but the general order 09-132 states "upon the use of the mobile restraint chair, the shift supervisor <u>shall</u> notify the Chief of Security and Deputy Warden of the specific circumstances which lead to the initial request for its use." Plaintiff requests this documentation. It is material because the general order authorizing the use of the restraint chair states; (6) The use of the restraint chair shall be requested by S.S.T., O.I.C to the Shift Supervisor, and only under the following circumstances: (i) The offender is physically abusive to staff or himself, combative, or unruly. (ii) <u>Conventional means of control are ineffective, i.e, talking to the offender in a calm manner in an attempt to de-escalate, placing the offender in an observation/isolation cell to remove external stimuli, and giving the offender an additional opportunity to calm down and cooperate even after the mobile restraint chair order has been given. If the offender demonstrates adequet self control, the order for use of the mobile restraint chair may be discontinued.</u> All of these directions were ignored making the use of force excessive, and to disregard these required instructions is gross negligence

and deliberate indifference, and relief requested is required. The plaintiff's "unnecessary motion to the court" is the only reason why the plaintiff recieved the right to view the video footage. The KDOC representative misleads the courts in its response when she stated "the reason for seal. the substantial interest that defendants have in keeping the prison surveillance video under seal is not a need to shield the precise events depicted in the video footage from public view. Rather, the video should remain under seal to protect the safety and security of both inmates and prison staff. Specifically, if inmates or public receive access to prison videos, inmates could learn the cameras' blind spots or the places in the prison where there is no camera coverage. Should they become familiar with the locations of those cameras blind spots, they may seek to commit prohibited acts-including acts of violence - in those locations." This is deceptive and does not apply because the video in question does not come from any cameras mounted in strategic areas or ways. It is from a hand held camcorder. No blind spots or anything described in the reason for denying the request for the footage.

Plaintiff has a right to possess any evidence used against him, and this is no exception. The exceptions or examples the defense use to justify the seal are cases refering to prison surveilence footage, which would jepardize security, not the hand held cam-corder.

13. The response says "the court never ordered KDOC to interview Mr Blake." But that is merely a play on words with the

Case 5:21-cv-03046-SAC   Document 43   Filed 08/04/22   Page 6 of 7

clear purpose to circumvent the order given to "<u>interview all witnesses having knowledge of the facts, including plaintiff.</u>" The defense is trying to interpret this as having discretion to not interview <u>all</u>, but who they choose, or those only who have favorable input for the defense, which is incorrect and an abuse of the order. This order, that the defense calls "never ordered KDOC to interview Mr Blake" specifically states "It Is Therefore Ordered By the Court that: (3) Officials responsible for the operations of the EDCF are directed to undertake a review of the subject matter of the complaint:

  (a) To ascertain the facts and circumstances.
  (b) To consider whether any action can and should be taken by the institution to resolve the subject matter of the complaint; and
  (c) To determine whether other like complaints, whether pending in this court or elsewhere, are related to this complaint and should be considered together.

Then the order says to interview all witnesses including the plaintiff. This is a order, a directive that must occur. The defense relys on word play to avoid responsibility for not complying with the courts order, with its Blacks Law reference, but never the less, the word order means command in Marrian-Webster dictionary, the only one I have access to, due to EDCF's other illegal regulation that gives me access to the Law library only once a month.

That rule was posted on our inmate tablets and enforced. Without interviewing the plaintiff, a witness having knowledge of the facts, the thing that qualifies the plaintiff to testify, the defense through KDOC has given this Honorable Court an intentionally incomplete version of the facts and also was able to alter the facts to fit its false interpretation of the event, which amounts to misconduct. This reminds the courts of a unsolicited statement made earlier in response by the defense "the substantial interest that defendant have in keeping the prison surveillance video under seal is <u>not a need to shield the precise events depicted in the video footage from public view</u>." But that is exactly what the deceptive move of not interviewing the plaintiff is doing, in violation of this Honorable Courts order.

Respectfully Submitted
Shaidon Blake #96323
EDCF PO Box 311
El Dorado, KS 67042

This motion is true under the penalties of perjury
Shaidon Blake 8-4-22

This was E Filed to the US District Court for Kansas this 8th day of August 2022.