IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHAIDON BLAKE,

                              **Plaintiff,**

        v.                                                                         CASE NO. 21-3046-SAC

**(FNU) WALLACE, et al.,**

                              **Defendants.**

**MEMORANDUM AND ORDER**

        This civil rights case is before the Court for screening after the submission of a *Martinez* Report. Plaintiff alleges that his constitutional rights were violated while he was housed at the El Dorado Correctional Facility (EDCF) in El Dorado, Kansas. After reviewing the *Martinez* Report filed by officials of the EDCF and Plaintiff's responses to the Report, the Court finds that Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief may be granted under § 1983 for the same reasons outlined in the Court's order to show cause (Doc. 4). Those reasons are explained again below, with references to the Report and Plaintiff's responses.

**I. Nature of the Matter before the Court**

        Plaintiff's Complaint alleges that he was forced into a restraint chair and given injections of morphine and fentanyl when he refused to be transferred to a hospital after EDCF staff determined that he may have been having a stroke. Plaintiff claims this violated his right to refuse medical treatment and was an excessive use of force.

1

Plaintiff names as defendants Sergeant Wallace, Sergeant Gorman, Sergeant Chastain, Nurse Christian, and Centurion Health Services. He seeks compensatory and punitive damages, as well as unspecified injunctive relief.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of such entity to determine whether summary dismissal is appropriate. 28 U.S.C. § 1915A(a). Additionally, with any litigant, such as Plaintiff, who is proceeding in forma pauperis, the Court has a duty to screen the complaint to determine its sufficiency. *See* 28 U.S.C. § 1915(e)(2). Upon completion of this screening, the Court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The Complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it

3

innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. Discussion

Plaintiff's Complaint is dismissed for the following reasons.

### A. Failure to State a Claim

The Complaint fails to state a claim for violation of Plaintiff's constitutional rights. Plaintiff claims he was sedated and forced to go to the hospital when Defendant Christian suspected he was having a stroke. He alleges violation of his Fourteenth and Eighth Amendment rights. [1]

*Fourteenth Amendment*

Plaintiff states "the law protects me from being forced to receive any invasive medical procedure." Doc. 1, at 6. Essentially, he claims Defendants violated his liberty interest in rejecting unwanted medical treatment.

"[T]he proper standard for determining the validity of a prison regulation claimed to infringe on an inmate's constitutional rights is to ask whether the regulation is reasonably related to legitimate penological interests." *Washington v. Harper,* 494 U.S. 210, 223 (1990). Thus, "prison officials may compel a prisoner to accept treatment when [they], in the exercise of professional judgment, deem it necessary to carry out valid medical or penological objectives." *Lowry v. Honeycutt,* 211 F. App'x 709, 712 (10th Cir. 2007) (unpublished opinion). Here, the defendants had legitimate medical objectives for requiring Plaintiff to go to the hospital for

---

[1] Plaintiff also alleges violation of his Fourth Amendment rights. However, the Supreme Court has held that the Fourth Amendment governs "pretrial deprivations of liberty." *Albright v. Oliver*, 510 U.S. 266, 274 (1994). Therefore, it is not applicable to Plaintiff's claims.

evaluation. Corrections officials are required to provide prisoners with adequate medical care. As stated by Plaintiff, "corrections staff w/ Nurse Christian made the decision to force [Plaintiff] to go to the hospital off site . . . based on their observation, not by request from [Plaintiff]. They said I looked like I was experiencing a stroke." Doc. 1, at 4. Even though Plaintiff disagreed with that assessment, "the judgment of prison authorities will be presumed valid unless it is shown to be such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." *Lowry*, 211 F. App'x at 712. The allegations contained in the Complaint do not overcome that presumption of validity, and nothing in the *Martinez* Report or Plaintiff's responses casts anything more than speculative, unsupported doubt on the defendants' motives or the validity of their objectives.

To the contrary, the video recording submitted as an exhibit to the Report shows all EDCF personnel behaving calmly and respectfully, even kindly, toward Plaintiff. Defendant Chastain and Nurse Christian repeatedly explained to Plaintiff why they were sending him to the hospital and reassured him that it was for assessment and he would not have to stay at the hospital if he was okay.

Plaintiff responds to the Report by arguing that Defendants had a retaliatory motive for forcing him to go to the hospital for further assessment of his condition. As explained above, the Report provides no support Plaintiff's assertion that the defendants had anything other than a valid medical objective for their actions. Plaintiff refers to allegations, incidents, and grievances which have been the subject of past lawsuits to attempt to demonstrate an improper motive on Defendants' behalf. The Court does not find his argument persuasive.

5

Plaintiff also asserts that because his life was not in danger, the defendants had to get his consent to provide medical treatment and he did not consent. This argument is only possible in hindsight. At the time, the defendants did not know that Plaintiff's life was not in danger. They made an assessment based on what they saw, and the fact that the assessment may have been wrong has no bearing on their motives or their justification for providing Plaintiff with medical treatment.

### *Eighth Amendment*

Plaintiff alleges the violation of his Eighth Amendment rights. He questions the medical judgment made by Defendant Christian, and he alleges corrections officers used excessive force in effectuating that judgment.

### *Medical Care*

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishments. The United States Supreme Court has held that an inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Boyett v. County of Washington*, 282 F. App'x 667, 672 (10th Cir. 2008) (citing *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)). The "deliberate indifference" standard has two components: "an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991); *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

Plaintiff does not demonstrate any improper motive for Nurse Christian's medical judgment or the actions of corrections staff in implementing Christian's decision to send Plaintiff to the hospital. His allegations do not establish the deliberate indifference required for an Eighth

Amendment claim. Even if Plaintiff could establish that Nurse Christian's assessment of him was so flawed that it rose to the level of medical malpractice, a negligent diagnosis "fail[s] to establish the requisite culpable state of mind." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Likewise, a mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. *See Estelle*, 429 U.S. at 106–07; *Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993) (affirming that a quarrel between a prison inmate and the doctor as to the appropriate treatment for hepatitis did not successfully raise an Eighth Amendment claim); *Ledoux v. Davies*, 961 F.2d 1536 (10th Cir. 1992) (Plaintiff's contention that he was denied treatment by a specialist is insufficient to establish a constitutional violation.); *El'Amin v. Pearce*, 750 F.2d 829, 833 (10th Cir. 1984)(A mere difference of opinion over the adequacy of medical treatment received cannot provide the basis for an Eighth Amendment claim.). As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medial mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

*Estelle*, 429 U.S. at 105–06 (footnote omitted). Here, Plaintiff disagrees with Defendant Christian's diagnosis that he may have suffered a stroke. A difference of opinion between a medical provider and a patient does not give rise to a constitutional right or sustain a claim under § 1983. *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968).

The *Martinez* Report describes the events as follows. Defendant Gorman was escorting the medication pass in Plaintiff's cellhouse. When they arrived at Plaintiff's cell, Gorman observed Plaintiff behaving strangely. He had been yelling but began to speak quietly and in a slurred manner. Plaintiff reported that he had some pressure in his chest and did not feel well. His face was drooping, and he was having difficulty keeping his balance. Plaintiff's cellmate helped him sit on the toilet while Gorman called Nurse Christian. (*See* Doc. 28-3, at 3; Incident Report completed by Gorman.) Christian observed Plaintiff and decided she needed to assess him further. Plaintiff was escorted to the cellhouse clinic room. Christian contacted the on-call physician, Dr. Wilnaur, and they determined that Plaintiff should go to the emergency room for evaluation. (Doc. 28-3, at 9; 9/2/20 email of Laura Christian.) According to statements made during the video recording of the incident, Plaintiff has a history of heart problems, a suspected stroke about a year before this incident, and other medical and psychological issues.

In response to the Report, Plaintiff continues to disagree with Christian's assessment of him. He argues that he could speak, and his continuing verbal abuse would be "physically impossible" for someone having a stroke. He alleges that his blood pressure was normal, and the doctor at the emergency room immediately said Plaintiff had not suffered a stroke. This is no more than a disagreement about a diagnosis. As explained above, a disagreement over diagnosis or treatment does not support a finding that Plaintiff's constitutional rights were violated. Plaintiff's Eighth Amendment claim for constitutionally inadequate medical care is dismissed.

*Excessive Force*

As for Plaintiff's allegation of excessive force, a prison guard's use of force against an inmate is "cruel and unusual" only if it involves "the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "[A]n excessive force claim involves two prongs:

8

(1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Giron v. Corr. Corp. of America*, 191 F.3d 1281, 1289 (10th Cir. 1999). "An official has a culpable state of mind if he uses force 'maliciously and sadistically for the very purpose of causing harm,' rather than 'in a good faith effort to maintain or restore discipline.'" *Redmond v. Crowther*, 882 F.3d 927, 936–37 (10th Cir. 2018) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).

Setting aside the question of whether the use of force Plaintiff alleges was objectively harmful enough to rise to the level of a constitutional violation, Plaintiff clearly fails to establish the subjective prong of an excessive force claim. The prison officials used force to carry out Defendant Christian's medical judgment that Plaintiff should go to the hospital to be evaluated for a stroke. Plaintiff's allegations do not support a finding that force was used maliciously or sadistically or was intended to cause harm to Plaintiff.

Nothing in the Report indicates otherwise. The video shows that Plaintiff was agitated and verbally aggressive. The video also shows all EDCF personnel behaving calmly and respectfully toward Plaintiff. Defendant Chastain and Nurse Christian repeatedly explained to Plaintiff why they were sending him to the hospital and reassured him that it was for assessment and he would not have to stay at the hospital if he was okay. As opposed to forcing him into the restraint chair, the officers assisted him. Plaintiff appeared upset and expressed anxiety initially about someone coming to "f___ him up," then about going to the hospital and about needles in general. He also appeared to be in pain as he was assisted to the chair and at other points. He repeatedly verbally confronted the person recording the incident about a joke he apparently told at some point in the past that Plaintiff found to be racist. The video also shows that it was the Emergency Medical

9

Technicians (EMTs), not EDCF personnel, who administered pain medication to Plaintiff prior to moving him from the restraint chair to the gurney in apparent response to Plaintiff's anxiety and pain.

Plaintiff argues that he was not combative, only verbally aggressive, so the use of force (the restraint chair) was not justified under the KDOC's policy. However, KDOC's policy does not provide the standard for a constitutional violation. The standard is whether a defendant used force "maliciously and sadistically for the very purpose of causing harm." Nothing in the Complaint, the Report, or Plaintiff's response provides any support for such a finding. Plaintiff fails to state a claim for the infliction of excessive force under the Eighth Amendment.

### B. Defendants

Plaintiff fails to allege the personal participation of two of the named defendants. An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006); *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997). Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

In describing the incident, Plaintiff refers to Defendants Christian and Wallace. Otherwise, he mentions "corrections staff", "the defendants", and "officers." He does not refer to any actions

or involvement of Defendants Gorman or Chastain. While he describes them as "unit supervisor[s]", an official's liability may not be predicated solely upon a theory of respondeat superior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008); *Gagan v. Norton*, 35 F.3d 1473, 1476 n.4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995). To be held liable under § 1983, a supervisor must have personally participated in the complained-of constitutional deprivation. *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).

Plaintiff also names Centurion Health Services as a defendant. Assuming without deciding that Centurion is a state actor, a corporation acting under color of state law can be held liable under § 1983 only for unconstitutional policies and practices. It cannot be held liable under the doctrine of respondeat superior for the individual actions of its employees. *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (state prison medical department not a "person" under § 1983); *Green v. Rubenstein*, 644 F. Supp. 2d 723, 738 (S.D. W.Va. 2009); *Dudley v. Food Service-Just Care*, 519 F. Supp. 2d 602, 604 (D.S.C. 2007). Plaintiff has made no allegation about any policy of Centurion. He appears to have named Centurion solely because Defendant Christian is a Centurion employee.

For these reasons, Plaintiff fails to state a claim against Defendants Gorman, Chastain, or Centurion.

## VI. Plaintiff's Pending Motions

### A. Motion for Summary Judgment/Default (Doc. 29)

This is Plaintiff's second Motion for Summary Judgment. The motion has the same basis as the first motion: Plaintiff argues that the defendants failed to comply with the deadline to file the *Martinez* Report. The first motion was denied because the order states, "No answer or motion addressed to the Complaint shall be filed until the *Martinez* Report required herein has been prepared." (Doc. 7.) The Report had not been filed at the time of Plaintiff's motion and has now been filed. Therefore, Plaintiff's motion is denied.

The Court again points out that it ordered KDOC to prepare the *Martinez* Report, and KDOC is not a defendant to this action but rather merely an interested party. Hence, the Court declines to attribute KDOC's missed deadline to Defendants.

Plaintiff also argues that the defendants were ordered to interview him as part of the *Martinez* Report, and they have not done so. That is incorrect. KDOC (not the defendants) was authorized to interview him but not ordered to do so. Plaintiff has repeatedly and effectively made his view and recollection of events known to the Court and the defendants through his filings.

### B. Request for Discovery/Request for Exhibits (Doc. 36)

Plaintiff asks for a copy of the DVD containing the recording of the incident (Doc. 34). He states that he has also not viewed the DVD.

Defendants filed a response to Plaintiff's motion (Doc. 41). The response states that Plaintiff viewed the DVD on July 21, 2022, and is able to view the video again upon written request. Doc. 41, at 2.

The Court denies the motion as moot since Plaintiff has viewed the DVD and has the ability to view it again. To the extent Plaintiff's motion may be construed as requesting that the DVD (Doc. 34) be unsealed, his request is denied.

### C. Motion to Supplement Exhibits (Doc. 38) and Second Motion to Supplement with Exhibit (Doc. 40)

Plaintiff asks to supplement his response to the *Martinez* Report by adding an exhibit. The exhibit consists of more than 70 pages and includes motions and orders from this case, notices of electronic filing from this case, disciplinary hearing documentation for incidents unrelated to the events of that are the subject of this Complaint, documents and filings from two of Plaintiff's other civil rights actions (Case Nos. 21-cv-3176-SAC and 18-cv-3146-EFM-GEB), and emails between KDOC and Maryland Department of Corrections officials related to Plaintiff's classification status. Plaintiff argues that this exhibit "substantiates plaintiff's claims of retaliation and bolsters the credibility of the claims of excessive use of force." Doc. 38, at 1.

The Court has considered the motions and reviewed the exhibit. Plaintiff does not raise a separate claim of retaliation in his Complaint. However, he has raised retaliatory motive in connection with the subjective prong of the excessive force analysis. As explained above, the Court does not find his argument to be persuasive. He has not pointed to anything specific demonstrating that, *in this instance*, the defendants had a culpable state of mind, i.e., that force was used "maliciously and sadistically for the very purpose of causing harm." *Redmond*, 882 F.3d at 936–37.

To the extent Plaintiff's motions are requesting that Exhibit ZZ be considered by the Court and added to his response (Doc. 30) to the *Martinez* Report, they are granted.

13

**IT IS THEREFORE ORDERED THAT** this matter is **dismissed** for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment/Default (Doc. 29) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Request for Discovery/Request for Exhibits (Doc. 36) is **denied** as moot.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Supplement Exhibits (Doc. 38) and Second Motion to Supplement with Exhibit (Doc. 40) are **granted**.  Exhibit ZZ (Doc. 38-1) shall be filed as an exhibit to Doc. 30.

**IT IS SO ORDERED.**

DATED:  This 17th day of August, 2022, at Topeka, Kansas.


> **s/ Sam A. Crow**
> **SAM A. CROW**
> **U.S. Senior District Judge**