In The United States District Court For Kansas

Shaidon Blake
          Petitioner

          v.

Natasha Carter
     Attorney Generals office

Joselyn Oyer
          Defendants/respondent

In Re: Blake v. Wallace, et.al.

Case No: 21-3046-SAC

Case No. _____

Motion for Appropriat Relief

In Re: Shaidon Blake

          Here comes Shaidon Blake pro se, requesting
emergency relief

          Petitioner request an emergency special grand
jury pursuant to 18 U.S.C.S. § 3331, 3332. Petitioner request
to be present and testify in front of this special grand jury.
The following is sworn under oath pursuant to 28 U.S.C. §
1746. I Shaidon Blake 96323, solemnly declare upon my
oath, under the penalties of perjury (18 USC. § 1621)

1. The defendants did violate 42 U.S.C.S. § 1985 (2)
     Obstructing justice, intimidating party, witness or juror,
     by violating this Honorable Courts order for a Martinez
     report. (see ex # 7   ). In this Martinez report the defendants
     were ordered to "(3)(c) To determine whether other like
     complaints, whether pending in this court or elsewhere, are
     related to this complaint and should be considered together,
     and (5) Authorization is granted to the officials of EDCF to

2

interview ALL witnesses having knowledge of the facts, including Plaintiff. This order was given 2-3-22. The defendants prepared this report and submitted it to the courts with out doing either of the listed requests from the court. No inter view of the plaintiff occured which was intentional to keep the plaintiff off the official court record in violation of 42 U.S.C.S, 1985 (2). Petitioner made several requests to be interviewed to be denied. (See Ex#6, a grievance concerning this action that went unanswered and still to date unanswered and is afoot of a complaint in the District Court for Butler County under Writ of Mandamus.)

When preparing the Martinez report, the defendants conducted interviews presumptively, but the people interviewed were all defendants, no independent witnesses. This was purposed, in effort to distort the official record, obstructing justice. This not only violates 42 U.S.C.S. 1985 (2), but also local rules 21-6002 official Misconduct, K.S.A. 21-6102 Denial of civil rights, K.S.A. 21-5416 Criminal Mistreatment of a confined person, K.S.A. 21-5905 Interference with judicial process, and K.S.A. 21-5920 Tampering with a public record, all in furtherance of a violation of K.S.A. 21-6327 Kansas Rico Statutes, by obstructing justice in conspiracy with the accused in civil proceeding case Blake v. Wallace 21-3046-SAC. The defendants with their actions did willfully violate 18 U.S.C.S. § 1512 related to tampering with a witness, 18 U.S.C.S § 1503 related to obstruction of justice.

2. The defendants did violate Fed.R.C.P. 60 (B)(6), fraud on the court by purposely obstructing justice by hiding

important fact that would have changed the outcome of the case. One of the main questions the court needed to know was, whether the petitioner was force medicated with morphine and fentynal and was the use of force justified. The defendants response was petitioner was never forced medicated even though they both had narrative from the nurse invoked stating otherwise. (See ex# 4   )

The defense's fraud on the court by giving false information to a official inquiry removed the courts ability to properly function making the judgement void. The defendants were made aware of other misconduct committed by KDOC and EDCF officials and staff and took measures to conceal the misconduct, elevating this to a crime. The petitioners right to Due Process and Equal Protection under the law was violated because the defendants submitted known false evidence to the courts that affected the proceeding. also the defendants in the Martinez Report stated the plaintiff had to be placed back on the examination table by force, this is false. Its material because its how the defense justifies its use of force defense. Stating it was a necessary occurrence and the court agreed, deciding, the force was justified by the plaintiffs actions. But the main use of force report written by Capt Wallace who was the ranking officer on the scene states the petitioner did not resist the chair placement. (see ex# 1   )

3. Under fed.R.C.P. Rule 11 (b) it states "By presenting to the court a pleading, written motion, or other paper — whether by signing, filming, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the persons

knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or if specifically so identified, are reasonably based on belief or a lack of information.

Sanctions under (c), can be imposed by the court if it is determined that Rule 11 (b) has been violated. In Littler v. Martinez, 2020 U.S. Dist. Lexis 1850, U.S. Dist. Court for Southern Indiana granted default judgement in favor of the prisoner for the defending attorney blaitenly lying to the court and refusing to turn over evidence that exposes their falsities. The defendants altered facts, changed report conclusions to fit their agenda which is a violation of Fed. R. C. P. § 1512 (c)(1) which provides: (c) who ever corruptly : (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so with the intent to impair the objects integrity or availability for use in an official proceeding "Shall be fined under this title or imprisoned not more than 20 years, or both".

Model penal code's evidence tampering section, drafted

more than 50 years ago, similarily prohibits a person from "altering, destroying, concealing, or removing any record, document, or thing in an effort to thwart an official investigation or proceeding. [ALI, Model Penal Code § 241.7 (1), pp. 125 1962.) Emphasis added.

It is the petitioners claim that the misconduct was intentional, purposed to acheive the goal of getting the case dismissed, and the misconduct was a concerted effort between two or more making this a conspiracy according to K.S.A. 21-6327 Kansas RICO statute, 18 U.S.C § 241, 242, 371, 42 U.S.C §§ 1985, 1986 Civil Rights Conspiracy claim. (See Kush v. Rutledge 460 U.S. 719, 725-27, 103 S.CT. 1483 (1983) Conspiracy claims under § 1985 requires that the plaintiff allege and prove that the defendants agreed on a coarse of conduct that violated the statute. (see Hunnicutt v. Armstrong 305 F. Supp. 2d 175, 185, 190 (D. Conn. 2004)

Any person who conspires to deter, by force, intimidation, or threat, any party or witness "from attending or from testifying freely and truthfully in federal court, or conspire to harm a party or witness for doing so, or to influence or injure federal court jurors, are liable under the first clause of 42 U.S.C § 1985 (2)

The defendants knew the petitioners testimony or statement on the record would severly harm their case, so with the intentions of circumventing the courts order, the defense made a conscience decision to committ fraud on the court. The defense presented false evidence to the court in its Court ordered Martinez report case No 21-3046-SAC. The defendants in their response stated the petitioner was never forced medicated and reitterated the false

6

statement that the use of force they are defending was "justified due to the petitioners" physical resistance" of being placed in a restraint chair. Exhibit #1 contradicts this claim. This exhibit is defense's client whose official narrative clearly states "Offender Blake did not physically resist the chair placement."

The fact that a refussal of a invasive medical procedure, can warrent a used force and to the extrem of the use of a restraint chair, challenges the U.S. constitution on the level of reproductive rights. A woman can not be forced to have an abortion, even if abortion may save her life, and KDOC employees or Centerion does not have the authority to superceed the U.S. constitution by forcing petitioner to go to a hospital; during a pandemic. This is an absolute violation of petitioners civil rights but the defendants, two attorneys, defended this atrosity.

In Chandler, the opinion delivered by Biles, J, states "in a criminal prosecution, the states obligation is to ensure its case is vigorously but properly championed to bring about a just conviction, not merely to win. Prosecutors are the states instrument in fulfilling this duty. When they fail, our system fails, and the safe guards protecting the constitutional right to a fair trial strains to the breaking point. That is what happened in this case. (State v. Chandler 307 Kan. 657) The prosecution is under a duty to insure that only competent evidence is submitted to the jury. Above all, the prosecution must guard against anything that could prejudice the minds of the jurors and hinder them from considering only the evidence adduced. (quoted from Chandler)

7

In determining whether the error was harmless, or it prejudiced the defendants due process rights to a fair trial, the traditional constitutional harmlessness inquiry demanded by Chapman determins whether the state can demonstrate beyond a reasonable doubt that the error did not affect the trials outcome, in light of the entire record. (Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. 2d 705 (1967). The actions by the defense violated these standards set in Chandler and Chapman and a hearing on the claims is neccessary to verify and validate the record and assertain the facts. Though the defendants were defense attorneys in the case under question, their official capacity is attorneys for KDOC and the Attorney Generals office, so the ethics of both offices is in question by the misconduct.

The second clause of §1985(2) provides for actions against persons who conspire to obstruct the due course of justice is court with intent to deny any citizen the equal protection of the law or to harm a citizen for enforcing or attempting to enforce the right to equal protection (Chavis v. Clayton County School district, 300 F.3d 1288, 1291-94 (11th cir. 2002) The acts committed amounts to a violation of petitioners due process because the misconduct distorted the record, making the accuracy of the record questionable.

Substantive due process, such may be broadly defined as the constitutional guarantee that no person shall be arbitrarily deprived of life, liberty, or property; the essence of substantive due process is protection from arbitrary and unreasonable action (See Babineaux v. Judiciary Commission, La, 341 So. 2d. 396, 400)

To be clearly established, the contours of a right, must be sufficiently clear that a reasonable official would understand that what he is doing violates that right". (Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed. 2d 666 (2002)

"Significant and meaningfull alteration of documents or instruments is obstruction of justice" (see application of Bodkin D.C., N.Y., 165 F. Supp. 25, 30 Emphasis (added). "To hide or withdraw from observation, cover, or keep from sight, or prevent discovery of, constitutes obstruction" (People v. Eddington, 201 Cal. App. 2d 524, 20 Cal. Rptr. 122, 124). Thus, the question of whether the officials was aware that what they were doing violated the right in question, is answered by the overt act.

The acts perpetrated to justify the claim of conspiracy to violate federal constitutional rights is fraud on the court, falsifying official documents, and perjury. Every motion, brief, or court filing are under the penalties of perjury. So by presenting false information, known to be untrue to the court the defendants are guilty.

In Littler v. Martinez, 2020 U.S. Dist. Lexis 1850, the courts was faced with a "similar predicament because false statements from witnesses sworn to be truth. The case reads" Through Mr. Littler's persistence and court intervention, video evidence and emails were uncovered that cast serious doubt on the veracity of their sworn statements. The courts also expressed concerns regarding their respective counsel. It appeared that both may have violated Fed. R. C. P 11 and their ethical obligations as officers of the court."

The two lawyers "facilitated the state defendants falsehoods by

falling woefully short of her ethical obligations and those under Rule 11, to reasonably investigate whether the factual assertions she included in support of the motion for summary judgement had evidentiary support. Had she done so, Ms. Fiorini would have known that the State defendants had presented numerous false statements to the court."

This is the exact claim of the petitioner; by the defendants not properly vetting the requested information, they presented false information to the courts. This is one side, but the alternative is a more nepharious reason, simply to fraud the court in order to get the desired summary judgement. Exhibits # 1, shows petitioner did not resist, that report contradicts Exhibit's # 2 and 3, but Exhibit # 1 was wrote by the senior officer at the incident. Exhibit # 4, clearly states petitioner was medicated even after continuously refusing treatment. Exhibit # 5, affidavit of truth concerning the facts of this case is declared under the penalties of perjury and noterized. Exhibit # 6 is a grievance to be entered into the record to prove petitioner has made many attempts to go on the record as ordered by the court in the martinez report order. (See ex# 7). Exhibit # 8, is a narrative by U.T.M. Henke who did a preliminary inquiry about the facts surrounding and as a result of the use of force.

Its important to note Henke's conclusion, "from what I can see there does seem to be some significant misconduct that negatively impacted Mr Blakes chance of parole." This conclusion was due to falsified official documentation, known to both defendants, yet they failed to do their duties as a officer of the courts, instead, obstructing the courts, the petitioner, and justice by not presenting the

facts. Exhibit is very material to petitioners claim because its a grievance that made its way to KDOC Head quarters and ignored, the defendants represented KDOC in this matter and had access to this grievance along with all exhibits presented to this court.

The record in Littler goes on to state "If this was Ms Fiorini's only mis step" refering to the presenting perjured evidence to the courts, the court's goes on to say," lesser sanctions would be appropriet. But things spiraled from there. When Mr Littler, who was still proceeding pro se at this point, pointed out in his summary judgement opposition that video evidence in the record showed the state defendants declarations were false and the emails showed they had with held preserved video evidence from him, Ms Fiorini ignored him. She did not even acknowledge these statements, let dona with draw the false statements and immediately seek out the video evidence she previously told the courts did not exist. Then, after the court expressed serious concerns with multiple of the states defendants sworn statements, Ms Fiorini again passed on an opportunity to set this litigation on the proper path. Every State defendant re affirmed the truth of their sworn statements, even though video evidence revealed that some of their statements were indisputably false."

The petitioner faced the same delima when the defendants, even after receiving documented proof, still decided to present a defense to undefendable atrocities ,and in doing so presented false evidence to the court. Deputy Warden Hows of EDCF in response to petitioners request for compliance to the courts order to " interview all witnesses having know ledge of the facts, including plaintiff," states "we decided not to interview you. The courts

Order was optional." His interpretation is based on the phrasing "authorization is granted", but as petitioner discussed with Haws, Authorization is granted gives the defendants the ability to interview an opposing party whereas without the authorization from the courts, any interaction with the petitioner concerning the case could be construed as tampering or witness intimidation, especially due to allegations of retaliation being made by the petitioner.

The defendants knew it was vital to interview petitioner for the record to ascertain all the facts, but it was also more vital to not, because once the record is established without the truth, the defendants desired summary judgement was inevitable. The court goes on to say in Littler, "in almost every prisoner civil rights case, the States defendants and their counsel know that the pro se plaintiff will only be able to rebut their evidence with his own lay testimony and whatever evidence they provide during discovery. Prisoner's rarely are able to conduct depositions, and untestable or untested defense affidavits are almost always the foundation of a defense motion for summary judgement. Under these circumstances, it is paramount for the court to be able to trust that the information and sworn statements provided by defendants are truthful. This case has shattered that trust"

The court recognized the hurdle of every pro se prisoner litigant and the advantage the state and professional counsel takes, as did the defendants in the petitioners case. It is important to note this vital point made by the court that's applicable to petitioners case, when it states "The court wishes this was an isolated case gone awry.

Unfortunately, Ms. Fiorini's approach in this case is not unique, even setting aside the fact that she submitted false evidence. In the overwhelming majority of prisoner civil rights cases, defendants move for summary judgement regardless of whether there are genuine issues of material facts. When pro se plaintiffs respond with evidence that creates a material dispute of fact, they are ignored. Defendants reply not by confronting plaintiffs evidence, but by asking the court to grant summary judgement based on their version of the disputed facts. This is the very antithesis of the summary judgement standard."

The court goes on to state "it violates Rule 11(b)(2) for counsel to ask the court to commit an obvious error, and counsel rarely make such a request when the plaintiff is not a pro se prisoner. When defendants move for summary judgement or reply to their motion for summary judgement, there must be a good-faith basis to argue that summary judgement is warranted. The defendants approach is essentially "it can't hurt to ask" it can. Any frivolous motion or pleading .... is subject to sanctions" (Qusting Meeks v. Jewel Companies, Inc., 845 F.2d 1421, 1422 (7th Cir. 1988) as long ago as Mooney v. Holohan, 294 U.S. 103, 112 (1935), The court made it clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice. This was reaffirmed in Pyle v. Kansas 317 U.S. 213 (1942)

In Brady, the court held that suppression of material evidence justifies a new trial, irrespective of good faith or bad faith of the prosecution" (See American Bar Association project on standards for

13

criminal justice, Prosecution function and defense function § 3.11(a).

In closing, petitioner quotes the closing of Littler's counsel, because as the court said when it repeated the closing in its opinion, "it's worth repeating." There is probably no legal office in the state more aware than the three offices here of the full spectrum of pro se litigation, and particularly, inmate litigation. And I think everyone involved can probably agree that Mr. Littler is an exceptionally competent, exceptionally persistent litigant. And I am confident in saying that is probably the courts understanding as well. If I had filed a brief highlighting the exact same issues that Mr. Littler did in citing to the exact same record of evidence, I am hard-pressed to imagine that those issues would have been ignored and that we would have reached this point in the proceedings. We are only here because some perfect storm of an exceedingly competent pro se litigant and the courts willingness to take an active role in the discovery process and analyze the pro se pleadings and hundreds of pages worth of exhibits. And it is not at all difficult to imagine how under even slightly different circumstances, this case would be over, and judgement would have been awarded in favor of all defendants." (Quoted from Littler opinion. Attorney Gavin Rose)

This statement resonates loud due to the fact its true and applicable in petitioners case. Because it does apply, then so should the courts opinion.

For these reasons, the petitioner requests the following relief.

1. Convene a grand jury pursuant to 18 U.S.C. § 3332

2. Charges on defendants for violation of 18 U.S.C § 241, 242, 511 Conspiracy to violate federal constitutional rights.

3. Recall Mandate in case 21-3046 SAC

4. Reverse and Remand case 21-3046-SAC

5. Charges filed against the defendants in case 21-3046 SAC for assault and battery, conspiracy

6. A hearing to establish the record and merits of this claim

7. Sanctions hearings followed by sanctions for the defendants

8. Any and all relief this court deems fair and just.

9. Order to correct the record concerning petitioners parole (Ex#29 grounds)

Exhibits to be considered.

Ex# 1-8   Discussed within brief

Ex# 9 - Information of misconduct, both defendants were aware.

Ex#10 - Grievance about serious misconduct both defendants were aware

Ex#11 - Grievance about misconduct administration obstructing both defendants were aware but done nothing and did not include in Martinez Report.

Ex#12 - Grievance to warden about investigative units failure to act on misconduct, this report was included in discovery, both defendants were aware.

Ex#13 - Email from Unit team to head of investigative team now Regional deputy director of EAI, concerning the misconduct, he done nothing, and this report was included in discovery, both defendants were aware

Ex#14 - Official narrative by UTM Henke, he shared this info with all the administration, this was in file that went to both defendants, before Martinez report.

Ex#15 - UTS Reeves response about the grievances that went unanswered for over a year and still no response to date, in violation of law, defendants were aware.

Ex#16 - Email from KDOC Head quarters questioning rather petitioner was forced medicated. This was information both defendants were aware of.

Ex#17 - Email from defendants EDCF clients with false info. Petitioner was not

at LCF when he was charged with infraction and given OSR. Both of the defendants knew and the EDCF administrator who sent this Email knew as well. They als lied to Maryland Dept. of Corrections about petitioner.

Ex# 18- False narrative, the subject of exhibit #8, also contains Deputy Warden Das false statement in response to question d was petitioner ever forced medicated. Regardless of the lie, both defendants knew the truth. See ex#4.

Ex# 19- Email of EDCF investigative Unit with information acknowledging misconduct yet no one done anything, both defendants were aware.

Ex# 20- E- Filing with verification d defendants notification d all case info.

Ex# 21- Picture of petitioner during incident d use d force. Claims d stroke like symptoms visually not true. No droopyness, Nuthing. also notice eyes clear, not under the Influence or in distress.

Ex# 22- During use of force after ex# 21 was taken. IV In arm, this is when the morphine and fentynol was given after many refusals, Both defendants were aware of this.

Ex# 23- D.R showing KDOC was aware of petitioners complaints and still only action taken was petitioner was written up for 3 way calls. Defendants both were aware.

Ex# 24-27, Disposition from hearings never held. Example of misconduct. See date 8-17-2020 time 0932 hrs. Note testimony on this one is the same d the next 3 dispositions. Same date and time and testimony. One of the four hearings was with a different officer. It is impossible to hold 4 hearings with 2 different hearing officers at the same time with same testimony, verbatum. Both defendants were aware of this. (See Stacked Sanctions on cont. pages.)

Ex# 28 - Fines paid for fake hearings never held. Rocketeering!

These exhibits are all material because it establishes a pattern of known corruption and misconduct, and as officers of the state, the defendants had a duty to not defend the crimes, but correct them. Like in Littler, the court has the authority to impose sanctions and hold hearings. Also the court can correct the manifest injustice that occurred as a result of all the misconduct, order the record to be corrected. Order the KDOC and EDCF officials to respond to grievances marked ex # 6, 9-12. Due to newly discovered evidence, pursuant to ComaR 12.08.01.23 (8)(1)(3)(4)(b), (ex # 29), this court after review of circumstances may order KDOC and EDCF to send the correct information to the parole commissioner.

It was the narrative, (ex # 18) that was found out to be falsified (see ex # 8), that caused petitioner to be passed for 7 years by parole. This narrative comes as a result of the use of force in this case, all a pattern of abuse targeting petitioner because of civil matters being pursued in court. This is not a bald allegation, proof will also be presented through staff testimony.

Witness List

1. Unit team Manager Henke         Ex # 8, 13, 14
2. Unit team Supervisor Reeves      Ex # 15
3. Inmate Parole Officer Ms. Cheevers   Ex # 11
4. S.S.T. Chiles   subject of ex # 8
5. Classification Administrator M. Powers
6. Deputy Warden Hows
7. Patricia Smith Md. Dept. of Corrections Headquarters (Iss. Coord.)
8. Ms. Madgwick  Medical admin for Centurion

Petitioner invokes all protections under the All Writs Act 28 U.S.C § 1651 & 1654.

Respectfully Submitted,
Shaidon Blake 96323
EDCF PO Box 311
El Dorado, KS 67042

This is true under the penalties of perjury
Shai Blake

I declare a copy of this petition was mailed to the office of the attorney general office at 120 Sw 10th Ave, Topeka KS 66612 this 10 of july 2023

Exhibit 1

Page 1 of 2   Attachment A, IMPP 12-111
Effective 08-07-13

**REASON FOR USE OF FORCE**

On 9/3/2020 at approximately 1913, I responded to 42-149 for an escort to A1 medical room. After the initial assessment, the on-call doctor requested for him to be transported to Wesley Medical Center via EMS emergent due to Stroke like symptoms. At that point, offender Blake started to get verbally aggressive. I contacted the Captain's office and informed them about the situation. CSI Chastain and COI Nordquist arrived with the restraint chair.

**DESCRIPTION OF THE APPLICATION OF FORCE:**

CSI Gorman had control of offender Blake right arm and I had control of the left arm. We assisted the offender off the exam table to the restraint chair. Then CSI Gorman, CSI Chastain and I secured the offender to the chair. Offender Blake did not physically resist the chair placement.

**IDENTIFY INJURIES / TREATMENT & TIME OF TREATMENT / NAME & TITLE OF MEDICAL STAFF\***

Offender Blake was assessed by RN Christian, Laura 1950000258d. Initial assessment was a Stroke like symptoms at 1935.
*Medical reports of any injuries to staff or inmate shall be made a part of the Use of Force file.

**LIST ALL WITNESSES (specify staff or inmate):\***

Christian, Laura RN 19500002584
*All staff involved in or witnessing a use of force application shall submit a narrative report.

**OTHER EVIDENCE (If yes, describe and specify where it is secured):**

N/A

**ADDITIONAL COMMENTS:**

After offender Blake was secured in the restraint chair we escorted him to the trauma room where EMS was waiting for him. After the restraints replaced with the transport equipment SST took over the escort. Offender Blake off site to Wesley Medical Center via EMS at 2040.

Officer/Staff Member Filing Report:

CSI Robert Wallace    K0000218514    Signature    9/3/2020
Printed Full Name    Employee No.    Date

Name of Shift Supervisor:

CSII Taylor, Alan    K0000212034    Signature    9/3/2020
Printed Full Name    Employee No.    Date

Form #12-111-001



Exhibit 🖊 🐾 2

Attachment A, IMPP 01-113
Effective 04-08-13

**Kansas Department of Corrections**
**INCIDENT REPORT**

DATE: 09/03/20

FACILITY OR PAROLE REGION: EDCF

UNIT (if Applicable) Central

Time Report Submitted: 2200                    REPORT #: IR __ __ ___

WHAT HAPPENED: (Briefly describe the Incident.) Offender Blake #96323 displayed signs of possible stroke, A2-149.

WHEN: Time 1915 AM/PM    DATE: 09/03/20

WHERE: A2-149

WHO WAS INVOLVED: (Provide name(s) of Victim(s), Perpetrator(s), Witness(es) and specify V, P, or W. Also indicate whether the Individual(s) named are Employee, Volunteer, Private Citizen, Parolee, or Inmate by specifying E, V, C, P, or I. BE SURE TO USE FULL NAMES FOR ALL ENTRIES.) The EID, including any custom logon entry, must be in the State-issued ID number. A narrative must always be made to include time, etc., and date of birth for subjects who do not have same item of state-issued ID number.

| FULL NAME | INMATE/ STATE ID NUMBER | V,P,W, | E-I | FULL NAME | INMATE/ STATE ID NUMBER | V,P,W, | E-I |
|---|---|---|---|---|---|---|---|
| Blake, Shidon | 96323 | P | I | CSI Chastain, Shawn | K0000230109 | W | E |
| CSI Wallace, Robert | K0000218514 | W | E | RN Christian, Laura | 195000002584 | W | E |
| | | | | | | | |

HOW DID IT HAPPEN: (Method of Operation-M.O.)  While escorting the medication pass in A2, I came to cell A2-149 and immediately noticed signs of a possible stroke, contacted response nurse RN Christian.

WHY DID IT HAPPEN: (State Motive or Cause) Signs of possible stroke.
Description of Weapon Or Evidence Found: N/A
Was Search Of Area Made?   Yes  X No, by Whom: N/A
Were Still Photographs Taken? X Yes ____ No, by Whom: Response Officer
Was a Videotape Made? X Yes ____ No, by Whom: Response Officer
Evidence and/or Photographs/Videotape Turned Over To: Captain's Office
Was A Follow-Up Investigation Initiated? ____ Yes   X No

COMMENTS:  (Attach additional pages as necessary) On date 09/03/20 at approximately 1915 I was escorting the medication pass in A2 and came to cell A2-149. At the door it was immediately apparent that offender Blake #96323 was behaving abnormally. He had been yelling out his door the entire shift prior to the recent moments, he then spoke quickly with slurred speech, stating he was having some pressure in his chest and that he did not feel well. Offender Blake exhibited facial drooping, slurred speech, difficulty maintaining balance. Offender Blake's cell mate assisted him in sitting on the toilet seat as I called for RN Christian. Christian briefly began to assess Blake at the door but quickly determined she needed to assess him further. I contacted the Captain's Office for an additional escorting officer, CSI Wallace. CSI Wallace and I escorted Blake in belly chains and a wheel chair to the A1 Clinic Room to be assessed. RN Christian contacted the on-call doctor and it was determined that Blake would be sent to the hospital. Offender Blake verbally refused to go to the hospital and demanded to be given a refusal form. The three of us conversed with him to explain that, due to the fact that signs of potentially life-threatening conditions existed, he would not be allowed to refuse. Blake began suggesting that he would resist escort and attempt to fight any escorting officers. West Side. Response Team was contacted for escort, with mobile restraint chair and video camera. While waiting for response, offender Blake attempted to argue with CSI Wallace and began to get down from the examination table. After several orders were given by CSI Wallace to sit back down, we assisted him sitting back on the table by lifting him under his arms and placing him down. I placed by arms under Blake's shoulders and held onto his wrists, to prevent him from continuing to make hand movements toward CSI Wallace. Once the response team arrived with the chair, Blake did not physically resist placement in the mobile restraint chair. Offender Blake was escorted, on camera, to the Trauma Room where he was assessed by EMS staff. Blake was escorted to the hospital by other officers.

RELATED REPORTS COMPLETED:  (Check all that apply and attach a copy)
Disciplinary: ____ Yes X No                    Use of Force: X Yes ____ No
Wanted For Escape: ____ Yes X No              Admin Seg/P.O.: ____ Yes X No
Other Admin Seg: ____ Yes X No                Placement in County Jail: ____ Yes X No
Other Narratives: X Yes ____ No

NAME OF OFFICER FILING REPORT:
Signature: _[signature]_
State ID Number: K0000233070
Printed Full Name: CSI German, Sage
Date: 09/03/20

NAME OF REVIEWING SUPERVISOR:
Signature of Supervisor: _[signature]_
State ID Number: K000221234
Printed Full Name: Ellen R. Taylor
Date: 9/3/2020

Exhibit 🖊

Exhibit ♠ 🐞 3

# EL DORADO CORRECTIONAL FACILITY
# NARRATIVE REPORT

TO:  Captain's Office _____          DAY/DATE:  <u>Thursday/09/03/2020</u>
                                                        (Day/MM/DD/YY)

SUBJECT:  UOF ACH Blake _____         FROM:  Chastain, Shawn, R. Box 241
                                                        (Print:Last, First, MI Box #)

Who was involved: (Provide(s) of Victim(s), Perpetrator(s), Witness(s) and specify  V, P, or W.  Also indicate whether the individual(s)
named are Employees or Inmates by specifying E or I.  BE SURE TO USE FULL NAMES FOR ALL ENTRIES.)

| Last, First MI. | KDOC # or I/M # | Living Unit | Cell or Bunk | Last, First MI. | KDOC# or I/M# | Living Unit | Cell or Bunk |
|---|---|---|---|---|---|---|---|
| Chastain, Shawn R | K0000207099 | | | Wallace, Robert | K0000218514 | | |
| Gorman, Sage | K0000233070 | | | Christian, Laura | 19500002594 | | |
| Blake, Shidon | 96323 | A2CH | 149 | | | | |

Check appropriate box (s) below:

☐ Information - **No response request**                    ☐ Supplement to Incident Report IR# ____ - ____ - ____

☐ Information - **Response requested**                    ☒ Supplement to Use of Force Report UOF# _____ - ____

☐ Supplement to Disciplinary Report DR#

Facts:
On 09/03/2020 at approximately 1945 I responded to ACH per the shift supervisor to assist with an escort. Upon arriving to ACH it was explained that offender Blake #96323 had been assessed by nurse Christian and needed to go to the trauma room, but was refusing to be taken there. I assisted with securing offender Blake's legs in leg irons. He was being held in place by CSI Wallace and CSI Gorman, as he did not want to be restrained in the leg irons. CSI Wallace held offender Blake's #96323 left arm while CSI Gorman held Blake's #96323 right arm. CSI Wallace also placed his leg in front of offender Blake's #96323 left leg to prevent him from kicking as I applied the leg iron to offender Blake's #96323 left leg. I then secured the right leg with the leg irons with less resistance from offender Blake #96323. We then placed offender Blake #96323 in the restraint chair, to facilitate his movement, as offender Blake #96323 still did not want to be escorted to the trauma room. I assisted in securing offender Blake's #96323 waist and left arm, while attempting to calm him as much as possible. After offender Blake #96323 was secure in the restraint chair, we escorted him to the trauma room, and he was assessed by EMS, then taken by EMS to Wesley medical center for outside medical care.

(Attach additional pages as needed)
Distribution to be made by the ranking shift supervisor in accordance with narrative distribution, supporting documentation and distribution check list.

☐ Warden  ☐ DWO Suite  ☐ DWP  ☐ DWSS  ☐ Class. Admin.  ☐ I&I  ☐ Food Serv.  ☐ Maint.  ☐ Other: _____

UTM  ☐ A  ☐ B  ☐ C  ☐ D  ☐ E  ☐ U-Dorm        ☐ East A  ☐ East F      ☐ North Unit      ☐ East Unit

                                                        Chastain, Shawn K0000207099
_____CSI Chastain_____                                  Print Full Name & KDOC#
Signature
Supervisory Action Taken:

                        _____H. Abdul-Rahim_____
                        Supervisor's Signature

Revised: 09/03/20

Exhibit 🐟 🐟

Exhibit ▓▓▓ 9

Troy Carrell [KDOC]

| | |
|---|---|
| From: | Christian, Laura <lchristian@TeamCenturion.com> |
| Sent: | Thursday, September 3, 2020 10:59 PM |
| To: | KDOC_EDCF_Narrative_Submission_DL; DL KS EDCF Nurses; DL KS EDCF BH; DL KS EDCF CMA |
| Subject: | A2 149 Blake 96323 |

*EXTERNAL:* This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Called to offenders cell for slurred speech and unusual behavior. Spoke with offender and noticed the right side of his mouth was drooping. Offender removed from cell and taken to nurses station for further evaluation. Dr. Wilnaur called with the findings and orders received to have the offender transported per EMS to Wesley. Restraint chair was used to transport the offender from the nurses station to the trauma room. Offender was afraid and had become combative. Offender delivered to EMS staff without injury. EMS medicationed the offender for pain and transported him to Wesley.

L. Christian R.N.

CONFIDENTIALITY NOTICE: This communication contains information intended for the use of the individuals to whom it is addressed and may contain information that is privileged, confidential or exempt from other disclosure under applicable law. If you are not the intended recipient, you are notified that any disclosure, printing, copying, distribution or use of the contents is prohibited. If you have received this in error, please notify the sender immediately by telephone or by returning it by return mail and then permanently delete the communication from your system. Thank you.

1

Exhibit ▬ 19

Ex# 5

# Affidavit of Truth , Emergency Declaration

Pursuant to 28 U.S.C. §1746, I Sheldon Blake 96323, here with
Solemly declare upon my oath under the penalties of perjury
(18 U.S.C. §1621) that the following is true and Correct;

1. On 9-3-20 I was the victim of a unprovoked assault
   by Capt Wallace, Sgt Chastain, and UTM Gorman.

2. This unprovoked incident came as a result of me refusing
   medical treatment as is my right to refuse any invasive
   medical proceedures.

3. I did not present no reasons to be physically restrained

4. The mentioned all participated in a excessive unneccessary
   Use of force

5. I clearly and continuously refused all medical treatment
   and was told I could not by EDCF and Centerion staff

6. I was given a IV and Morphine was given then 10 minutes
   later fentynol was given for pain, but I was not in pain and
   I refused All treatment.

7. I was very afraid and felt like my life was in danger.

8. Ive made EDCF administration aware of this incident and
   KDOC head Quarters yet no one done anything.

9. I was punished and retaliated on for reporting this incident

10. I am seeking emergency relief due to the threat still existing
    and pursuant to Kansas Code of criminal proceedure cert. 23
    22-2301 (4)(2), I want criminal charges of assault, conspiracy
    and obstruction under K.S.A. 21-6327, Denial of civil rights

K.S.A. 21-6602, Criminal Mistreatment of a confined person
K.S.A. 21-5406, Interference with judicial process 21-5905,
Official Misconduct 21-6002, and any other applicable
charges, all in violation of Kansas RICO statute K.S.A. 21-6327.

11. I request a grand jury to be convened or its equivalent
to 18 U.S.C.S. § 3332 (§ § 3331-3334) special grand jury.
I would like to appear in person before this special grand jury
or its equivalent.

NOTARY PUBLIC - State of Kansas
ALLISON AUSTIN
My Appt Expires 10/03/26

EX 6

## Grievance #183918552

**Profile Photo:**



**Audit Photo:**

Audit Photo

**Resident Info**

Name: Shidon Blake
Booking Number: 96323
Submitted Date: 06/13/22 14:06
Submitted from Location/Room: 07,0D1246/D
Current Location/Room: 07,0D1246/D
Facility: El Dorado Correctional Facility - (KS DOC)

**Form Info**

Category: Grievance
Form: Unit Team Grievance

**Grievance Info**

Status: OPEN
Facility Deadline: 08/18/22 23:59 (-164d)
Grievance Level: 2
Resident can reply: No
Disposition @ 1: Remedy Denied

**Details:**

Serious complaints on the level of illegal activities not being addressed.form 9's and grievances being ignored

**Details:**

Been trying to be interviewed for months.been writing administration too long to have no response.

I have been writing complaints concerning the falsification of legal documents that caused me to loose my parole.This was verified by EDCF staff,the originator of the osr report that got me stuck in seg.UTS Henke,UTM Johnson and everyone in position of authority has been made aware of the illegal actions done to me.Major Randolph along with EAI Cannon yet no one has done any thing about it.I stayed in seg over a year and 8 months for retaliation of my civil suit,that's how most of my troubles started,but the real problem is as serious as the allegations I've made,and even with staff cooboration,no one chose to investigate,even though the federal courts ordered an inquiry that required EDCF to prepare a Martinez report,which amounts to a show cause order for EDCF officials to explain what happened to me.But without the ordered interview of me,there's no way to properly respond with the truth.If staff is willing to arrogantly ignore a federal court order,falsify legal documents, and engage in a cover up,there's no limit to what they are capable of doing.They have already engaged in criminal activities in violation of IMPP 02-118,state and federal law and plausible deniability is removed because I made sure there was no one not familiar with my situation.3 correspondences sent to the warden were intercepted and answered by UTS Horsh and other unit team who have no ability to respond on behalf of the warden,they are not the designee.

Formal investigation after all parties are interviewed,and appropriate legal actions to include formal charges and dismissal

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 11/09/22 16:13 | John Henke | Internal Note | He states that they forces celled him anyways and took him to the hospital. While in the hospital he had a conversation with CSI Sanchez and COI Chiles who were at the time on SST. He stated that this conversation along with some DRs that he claimed were improperly done, were used as the basis to place him on OSR. When I was in ACH I was doing rounds when CSI Sanchez, at the time he was still on SST, come into the house and Mr. Blake called him over. Mr. Blake then asked him about the conversation they had at the hospital to which CSI Sanchez stated that his report was taken very much out of context. Later I was able to talk with COI Chiles and out of curiosity I asked him about that day and the narrative that he had written. COI Chiles stated to me that his narrative was indeed altered and that what the narrative stated now was not what happened. |
| 08/04/22 14:35 | Shidon Blake | Escalated | Blake, Shidon has escalated the grievance on 08/04/2022 14:35 -06:00 Response: You have been provided with the actual court order.it was given with the retuned grievance to unit team Henke |
| 08/04/22 14:35 | | Changed Status | From Closed to Open due to Appeal |
| 08/04/22 14:35 | | Changed Level | Level changed from 1 to 2 due to Appeal |
| 08/01/22 11:02 | Amanda Johnson | Staff Response | 08/01/2022 To: Blake 96323 In response to your grievance regarding the federal courts ordering an inquiry and to prepare a Martinez report. Per UTM Shearburn, legal has no information from a court requiring this. Please provide the number as requested earlier so it can be addressed. No further action will take place. UTM A Johnson |
| 08/01/22 11:02 | Amanda Johnson | Changed Status | From 'Open' to 'Closed' |
| 08/01/22 10:55 | Amanda Johnson | Changed Disposition | Changed the disposition value for level 1 from to Remedy Denied |
| 06/28/22 07:29 | Kirble Todd | Staff Response | Can you please provide me with the Federal Court order case number |



# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SHAIDON BLAKE,

                **Plaintiff,**

    v.                              **CASE NO. 21-3046-SAC**

(FNU) WALLACE, et al.,

                **Defendants.**

### MEMORANDUM AND ORDER

Plaintiff filed this *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff is a state prisoner confined at the El Dorado Correctional Facility ("EDCF"). The Court granted Plaintiff leave to proceed *in forma pauperis*.

Plaintiff's Complaint (Doc. 1) alleges his constitutional rights were violated when he was forcibly administered injections of morphine and fentanyl by EDCF medical and corrections staff.[1] The Court conducted an initial screening of the Complaint and entered an order requiring Plaintiff to show cause why his Complaint should not be dismissed. *See* Memorandum and Order to Show Cause, Doc. 4 ("MOSC"). Plaintiff filed a timely response to the show cause order. *See* Doc. 5.

In his response, Plaintiff clarifies the date of the incident (September 3, 2020), meaning the Complaint was filed within the two-year limitation period. Plaintiff further clarifies the involvement of Defendants Gorman and Chastain and that he is alleging an improper retaliatory motive on the part of the defendants. He argues that Defendants' use of force and the choice of medication administered cannot be justified under the circumstances.

---

[1] The Court notes that Plaintiff references other possible claims in his response to the MOSC, such as being put in an improperly disinfected quarantine cell upon his return from the hospital and alleged HIPAA violations. To the extent Plaintiff was attempting to add claims to his Complaint through his response to the MOSC, such attempt is rejected.

1



The Court has considered Plaintiff's response and finds that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate officials of the EDCF. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate officials to prepare and file a *Martinez* Report. Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915.

**IT IS THEREFORE ORDERED BY THE COURT** that:

(1)     The Clerk of Court shall serve Defendants under the e-service pilot program in effect with the Kansas Department of Corrections ("KDOC").

(2)     Upon the electronic filing of the Waiver of Service Executed pursuant to the e-service program, KDOC shall have **sixty (60) days** to prepare the *Martinez* Report.

(3)     Officials responsible for the operation of the EDCF are directed to undertake a review of the subject matter of the Complaint:

        a.     To ascertain the facts and circumstances;

        b.     To consider whether any action can and should be taken by the institution to resolve the subject matter of the Complaint; and

        c.     To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Complaint and should be considered together.

(4)     Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff. The KDOC must seek leave of the Court if it wishes to file certain exhibits or portions of the report under seal or without service on Plaintiff. Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of

medical or psychiatric examinations shall be included in the written report.  Any recordings related to Plaintiff's claims shall also be included.

(5)    Authorization is granted to the officials of EDCF to interview all witnesses having knowledge of the facts, including Plaintiff.

(6)    No answer or motion addressed to the Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(7)    Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed Defendant's answer or response to the Complaint and the report ordered herein. This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter KDOC as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein. Upon the filing of that report, KDOC may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff, to Defendants, and to the Attorney General for the State of Kansas.

**IT IS SO ORDERED.**

DATED:  This 3rd day of February, 2022, at Topeka, Kansas.


s/ Sam A. Crow
SAM A. CROW
U.S. Senior District Judge

3





El Dorado Correctional Facility
1737 SE Hwy 54
P.O. Box 311
El Dorado, KS. 67042

Phone: (316) 321-7284
Fax: (316) 322-2018
www.doc.ks.gov/facilities/edcf

Jeff Zmuda, Secretary

Laura Kelly, Governor

Jeff Butler, Warden

On 9-3-2020 Mr. Blake was force celled and took him to the hospital despite the fact that he had told staff that he was fine and didn't need to go. While in the hospital he had a conversation with CSI Sanchez and COI Chiles who were at the time on SST. He stated that this conversation along with some DRs that he states were improperly done, were used as the basis to place him on OSR. When I was in ACH I was doing rounds when CSI Sanchez, at the time he was still on SST, come into the house and Mr. Blake called him over. Mr. Blake then asked him about the conversation they had at the hospital to which CSI Sanchez stated that his report was taken very much out of context and was made to be much worse than it was. Later I was able to talk with COI Chiles and I asked him about that day and the narrative that he had written. COI Chiles stated to me that his narrative was indeed altered and that what the narrative stated now was not what happened. From what I can see, there does seem to be some significant misconduct what negatively impacted Mr. Blakes chance of parole.

UTS Henke

EX#9

## Request #171640182

| | |
|---|---|
| **Profile Photo:**  | **Resident Info**<br><br>**Name:** Shidon Blake (1972-04-03)<br>**Booking Number:** 96323<br>**Submitted Date:** 04/01/22 12:31<br>**Submitted from Location/Room:** 07,0D1246/D<br>**Current Location/Room:** 07,0D1246/D<br>**Facility:** El Dorado Correctional Facility - (KS DOC) |
| **Audit Photo:**<br>Audit Photo | **Form Info**<br><br>**Category:** Form 9<br>**Form:** Unit Team Form 9<br>**Internal Tag:** No Tag |
| | **Request Info**<br><br>**Status:** PENDING<br>**Facility Deadline:** 04/15/22 23:59 (-163d) |

**Details of Request:**

My grievances have not made it through the normal protocol. My grievance concerning hearing officer falsifying official document

**Details of Request:**

**To::**
*(Name and Title of Officer or Department)*
Warden

**Please provide details about your request:**
*State completely but briefly the problem on which you desire assistance. (Be specific)*
Hearing officers falsified Dr dispositions and staff falsified official narrative to justify placing me on long term seg (osr).reporting officer responsible for initial report recently stated to it's Henke that the report was false and a title mid hara derivation of clear facts.this lanifest injustice caused me to loose my parole.I want a statement and report reflecting EDCF's correcting this highly unethicl and illegal acts done.I have reported this to many admin staff who were capable of resolving these matters,to no avail.in being fair sir, you have not been given the opportunity to fix this so ,respectfully, that's what this is. I've informed utm Heopner,utm Martin,it's Rodriguez, it's Reeves,utm Johnson,ms Perkins when she was utm of A cell house,ms Bos,it's Knapp,mental health Gulliver,major Randolph, capt Fuss,and EAI to include aform 9 to Cannon,all to no avail.if they didn't choose to believe me for what ever reason,the accusations are bad enough to warrant a investigation as requested, to no avail.with the very eventful year EDCF had in 2020, u would these issues would have been handled better.staff firings or what ever they want to call it from dept warden Early,to major Drago,and not to forget capt Buccannan,my point in saying this slr is,though many sings of corruption exist, no one cared enough or was brave enough to stand against their co-workers,placing me in a unfair spot.thank you sir. This is true under penalty of perjury because this is a legal document.

**Work Assignment:**
None

**Comment:**

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 09/02/22 14:30 | Shidon Blake | Resident Response | I am still waiting on a response. This request is well over due a official response. The prison population is rightful expected to follow KDOC rules and when violations occur, EDCF issues infractions. That's accountability, and I seek the same for the illegal actions done to me.This request and the grievance that followed shows criminal violations of established law,and it was verified by unit team Henke and unit team manager Johnson are aware and have been trying to resolve this violation of the law and my civil rights,to no avail.I have been patiently trying to seek justice and even offered a simple resolution.Without EDCF or its staff being blamed for the falsified legal documents, a letter stating a error in the system or in reporting is to blame but the report that was later admitted to was not true,has to be corrected.That false osr report and those false dispositions, that I can prove are false,caused Ie to loose my parole.I can move on with no legal action if this is fixed.Thank you |
| 09/02/22 14:30 | Shidon Blake | Resident Response | I am still waiting on a response. This request is well over due a official response. The prison population is rightful expected to follow KDOC rules and when violations occur, EDCF issues infractions. That's accountability, and I seek the same for the illegal actions done to me.This request and the grievance that followed shows criminal violations of established law,and it was verified by unit team Henke and unit team manager Johnson are aware and have been trying to resolve this violation of the law and my civil rights,to no avail.I have been |

| DATE/TIME | USER | ACTION | |
|---|---|---|---|
| | | | patiently trying to seek justice and was offered a simple resolution.Without EDCF or its staff being blamed for the falsified legal documents, a letter stating a error in the system or in reporting is to blame but the report that was later admitted to was not true,has to be corrected.That false osr report and those false dispositions, that I can prove are false,caused le to loose my parole.I can move on with no legal action if this is fixed.Thank you |
| 08/05/22 09:17 | John Henke | Staff Response | Forward to Warden Williams. |
| 08/05/22 09:47 | John Henke | Changed Status | From 'Open' to 'Pending' |
| 08/01/22 14:33 | Shidon Blake | Resident Response | Still waiting on a response |
| 08/01/22 14:32 | Shidon Blake | Resident Response | Still waiting on a response |
| 08/01/22 14:32 | Shidon Blake | Resident Response | Still waiting on a response |
| 04/25/22 10:56 | John Henke | Changed Status | From 'Pending' to 'Open' |
| 04/25/22 10:56 | *John Henke* | *Internal Note* | *Resident is claiming that this form 9 is not showing up on his tablet* |
| 04/19/22 15:39 | Mattee Powers | Staff Response | Can you provide me more specific details for your request, please? |
| 04/19/22 15:39 | Mattee Powers | Changed Status | From 'Open' to 'Pending' |
| 04/13/22 10:15 | *Amanda Johnson* | *Internal Note* | *Forwarded to CA Powers* |
| 04/13/22 10:04 | *Amanda Johnson* | *Internal Note* | *Forwarded to CA Bos* |
| 04/01/22 12:31 | Shidon Blake | Submitted New | My grievances have not made it through the normal protocol. My grievance concerning hearing officer falsifying official document |



## Grievance #212887482

| Profile Photo: | Resident Info |
|---|---|
|  | **Name:** Shidon Blake<br>**Booking Number:** 96323<br>**Submitted Date:** 11/10/22 07:19<br>**Submitted from Location/Room:** 07,0D1246/D<br>**Current Location/Room:** 07,0D1246/D<br>**Facility:** El Dorado Correctional Facility - (KS DOC) |

**Audit Photo:**

Audit Photo

### Form Info

**Category:** Grievance
**Form:** Unit Team Grievance

### Grievance Info

**Status:** OPEN
**Facility Deadline:** 11/24/22 23:59 (-33d)
**Grievance Level:** 1
**Resident can reply:** No
**Disposition @ Level 1:** Undecided

**Details:**

My grievances have not made it through the normal protocol. My grievance concerning hearing officer falsifying official document

**Details:**

Warden

Hearing officers falsified Dr dispositions and staff falsified official narrative to justify placing me on long term seg (osr).reporting officer responsible for initial report recently stated to it's Henke that the report was false and a title mid hara derivation of clear facts.this lanifest injustice caused me to loose my parole.I want a statement and report reflecting EDCF's correcting this highly unethicl and illegal acts done.I have reported this to many admin staff who were capable of resolving these matters,to no avail.in being fair sir, you have not been given the opportunity to fix this so ,respectfully, that's what this is. I've informed utm Heopner,utm Martin,it's Rodriguez, it's Reeves,utm Johnson,ms Perkins when she was utm of A cell house,ms Bos,it's Knapp,mental health Gulliver,major Randolph, capt Fuss,and EAI to include aform 9 to Cannon,all to no avail.if they didn't choose to believe me for what ever reason, the accusations are bad enough to warrant a investigation as requested, to no avail.with the very eventful year EDCF had in 2020, u would these issues would have been handled better.staff firings or what ever they want to call it from dept warden Early,to major Drago,and not to forget capt Buccannan,my point in saying this sir is,though many sings of corruption exist, no one cared enough or was brave enough to stand against their co-workers,placing me in a unfair spot.thank you sir. This is true under penalty of perjury because this is a legal document.

None

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 11/10/22 07:20 | Shidon Blake | Request turned into Grievance | Shidon turned request 171640182 into grievance 212887482 . |
| 11/10/22 07:20 | Shidon Blake | Appeal Answer | Appeal Answer: I have not received a proper response addressing this serious issue and its been a long time. |
| 11/08/22 11:42 | John Henke | Changed Status | From 'Pending' to 'Closed' |
| 11/08/22 11:42 | John Henke | Staff Response | Unit team has reached the end of what we can help Mr. Blake with on this issue. UTS Henke |
| 09/02/22 14:30 | Shidon Blake | Resident Response | I am still waiting on a response. This request is well over due a official response. The prison population is rightful expected to follow KDOC rules and when violations occur, EDCF issues infractions. That's accountability, and I seek the same for the illegal actions done to me.This request and the grievance that followed shows criminal violations of established law,and it was verified by unit team Henke and unit team manager Johnson are aware and have been trying to resolve this violation of the law and my civil rights,to no avail.I have been patiently trying to seek justice and even offered a simple resolution.Without EDCF or its staff being blamed for the falsified legal documents, a letter stating a error in the system or in reporting is to blame but the report that was later admitted to was not true,has to be corrected.That false osr report and those false dispositions, that I can prove are false,caused te to loose my parole.I can move on with no legal action if this is fixed.Thank you |
| 09/02/22 14:30 | Shidon Blake | Resident Response | I am still waiting on a response. This request is well over due a official response. The prison population is rightful expected to follow KDOC rules and when violations occur, EDCF issues infractions. That's accountability, and I seek the same for the illegal actions done to me.This request and the grievance that followed shows criminal |



## Grievance #222457102

| | |
|---|---|
| **Profile Photo:**  | **Resident Info** |
| | **Name:** Shidon Blake |
| | **Booking Number:** 96323 |
| | **Submitted Date:** 12/29/22 15:56 |
| | **Submitted from Location/Room:** 07,0D1246/D |
| | **Current Location/Room:** 07,0D1246/D |
| | **Facility:** El Dorado Correctional Facility - (KS DOC) |
| **Audit Photo:** Audit Photo | **Form Info** |
| | **Category:** Grievance |
| | **Form:** Reentry Grievance |
| | **Grievance Info** |
| | **Status:** OPEN |
| | **Facility Deadline:** 01/12/23 23:59 (13d) |
| | **Grievance Level:** 1 |
| | **Resident can reply:** No |
| | **Disposition @ Level 1:** Undecided |

**Details:**

I need finalized report on ms Cheever a findings that my parole hearing was not valid due to being based on falsified documents

**Details:**

Ms Cheever's and or her supervision

A preliminary finding of misconduct was determined concerning the parole hearing I had because the findings were based on falsified documentation which negatively effected my parole chance.I am waiting on these finding to be documented because I can present them to the parole commissioner for Maryland

Trash crew

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 12/29/22 15:56 | Shidon Blake | Request turned into Grievance | Shidon turned request 221207672 into grievance 222457102 |
| 12/29/22 15:56 | Shidon Blake | Appeal Answer | Appeal Answer: Administration is responsible for investigating misconduct by staff but this has yet to happen pass the preliminary stage.UTS Henke and Ms Cheever's came to the conclusion that the falsified documentation negatively effected my parole hearing.Its not Maryland's job to initiate a request for documentation,EDCF and KDOC are duty bound to report the crime commited against me.It is illegal to falsify official legal documents and there is no question rather this happened because Deputy Wardens Howse,Moore, and Bos,were all informed.The author of the falsified narrative that along with falsified disciplinary reports admitted to Howse and UTS Henke that the narrative was changed and the report does not reflect any action that I've done.It was these reports that cost me parole.EDCF administration were presented with undisputable facts of civil rights violations and done nothing to fix even after staff agreed it happened.what was done was my administrative remedy procedures were interfered with by admi |
| 12/28/22 10:31 | Jillian Cheever | Changed Status | From 'Open' to 'Closed' |
| 12/28/22 10:31 | Jillian Cheever | Staff Response | UT Reeves was supposed to relay to you when I responded to his email on 12/16, that I've been told by administration that you can write directly to the Maryland PRB to try and appeal the decision and KDOC will not intervene unless Maryland PRB reaches out to us requesting documentation. I apologize that I couldn't be of further assistance and I truly hope Maryland gives you another chance. - IPO Cheever |
| 12/22/22 10:13 | Shidon Blake | Submitted New | I need finalized report on ms Cheever a findings that my parole hearing was not valid due to being based on falsified documents |





## Grievance #213673302

| Profile Photo: | **Resident Info** |
|---|---|
|  | Name: Shidon Blake<br>Booking Number: 96323<br>Submitted Date: 11/14/22 12:41<br>Submitted from Location/Room: 07,0D1246/D<br>Current Location/Room: 07,0D1246/D<br>Facility: El Dorado Correctional Facility - (KS DOC) |
| **Audit Photo:**<br>Audit Photo | **Form Info**<br><br>Category: Grievance<br>Form: EAI Grievance |
|  | **Grievance Info**<br><br>Status: OPEN<br>Facility Deadline: 12/19/22 23:59 (-8d)<br>Grievance Level: 1<br>Resident can reply: No<br>Disposition @ Level 1: Undecided |

**Details:**

EAI haven't responded

**Details:**

Warden

I have put in a request to speak with EAI but have been ignored.The courts even ordered for me to be interviewed but noons complied with the order.Cannon and Sissle been contacted by me and my unit team yet neither one responded.

Trash crew

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 12/05/22 08:58 | Keyon Reynolds | Recategorization | Changed Category and Form from 'Grievance /Unit Team Grievance ' to 'Grievance /EAI Grievance ' |
| 11/14/22 12:41 | Shidon Blake | Request turned into Grievance | Shidon turned request 191441222 into grievance 213673302 |
| 11/14/22 12:41 | Shidon Blake | Appeal Answer | Appeal Answer: No action was taken as a result of the proven misconduct. This misconduct ruling came as the result of unit team Henke's investigation into the allegations included in this complaint.Appropriet relief and an investigatory report is needed to remedy this along with a on record interview of me to get the facts on record.Impp02-112d is the provision for me to be polygraphed to ascertain facts and I am invoking that provision.thank you |
| 11/08/22 09:13 | John Henke | Changed Status | From 'Open' to 'Closed' |
| 11/08/22 09:13 | John Henke | Staff Response | I have tried to contact EAI on this issue but have not gotten any response back. I have reached then end of what I can do to help with this issue. UTS Henke |
| 09/02/22 14:58 | Shidon Blake | Resident Response | EAI Sissle was told about the illegal actions done to me and stated he couldn't do anything,its not in his job description. That's not true,eai investigates crimes being committed in KDOC,well unless it involves their colleagues that are reported by a prisoner. Because my situation reported rises to the level of civil rights being violated,Kansas law,and KDOC rules being broken yet no responce.If EAI hear a staff member is colluding with a prisoner conspiring to bring drugs into prison or to assist the prisoners escape,EAI would quickly jump on it.Or if one of these rats or confidential informants request to speak to Sissle or EAI,they don't waist any time,they hurry up to interview them to see who they can lock up,but the same efficiency is not dedicated to my issue because just like Sissle said I'm know as trouble.His label of me is bias and shows the contempt and malice for me and only because I did not except my rights being violated. I have not had a D.R. in two years or more,but the hate started when I challenged and refuse to drop a civil suite about my books.Because I named Paul Snyder,and Angela Randolph did not like it a long train of illegal consequences has brought us to where we are now.I am seeking in house resolution to this difficult situation but I need the warden to address this with me in person and its over.Thank you |
| 09/02/22 14:58 | Shidon Blake | Resident Response | EAI Sissle was told about the illegal actions done to me and stated he |

Ex #13

**John Henke [KDOC]**

| | |
|---|---|
| **From:** | ████████████ |
| **Sent:** | Friday, April 22, 2022 3:15 PM |
| **To:** | John Henke [KDOC] |
| **Cc:** | KDOC_EDCF_EAI_DL |
| **Subject:** | FW: Blake #96323 |

Thank you

John Cannon, SAS
EDCF EAI Division

**From:** John Henke [KDOC] ████████████
**Sent:** Friday, April 22, 2022 2:57 PM
**To:** John Cannon2 [KDOC] ████████████
**Subject:** Blake #96323

Sorry I didn't get this to you sooner but I've crazy busy. So when resident Blake #96323 first came onto my case load back in ACH, he told me about some of what he persevered as misconduct of different staff members. He stated that on 9-3-2020 he was forced celled and taken to the hospital under the assumption that he was having a stroke. Resident Blake claims that he told the officers that he was fine and that he was not experiencing any stroke like symptoms and that he refused medical treatment. He states that they forces celled him anyways and took him to the hospital. While in the hospital he had a conversation with CSI Sanchez and COI Chiles who were at the time on SST. He claims that this conversation along with some DRs that he claimed were improperly done, were used as the basis to place him on OSR. When I was in ACH I was doing rounds when CSI Sanchez, at the time he was still on SST, come into the house and Mr. Blake called him over. Mr. Blake then asked him about the conversation they had at the hospital to which CSI Sanchez stated that his report was taken very much out of context. Later I was able to talk with COI Chiles and out of curiosity  I asked him about that day and the narrative that he had written. COI Chiles stated to me that his narrative was indeed altered and that what the narrative stated now was not what happened. Mr. Blake also stated that his DR hearing was done is such a was that he was denied his due process. He claims that he was not allowed to speak in his deference and that a staff assistance was assigned to him. Though this is allowed in the rules he does not believe the staff assistance as allowed to properly defend him. The part I can't confirm but the conversation with both Sanchez and Chiles I can.  I'm not sure what you can do with any of this information but you did ask me to email you it, so I am. Once again I'm sorry for not getting this to you sooner but it's been rather hectic here in DCH.

## Blake #96323

On 9-3-2020 he was forced celled and taken to the hospital under the assumption that he was having a stroke. Resident Blake stated that he told the officers and medical that he was fine and that he was not experiencing any stroke like symptoms and that he was refusing medical treatment. I was later able to confirm that he did tell those present that he did not need medical attention at that time. He states that they forces celled him anyways and took him to the hospital. While in the hospital he had a conversation with CSI Sanchez and COI Chiles who were at the time on SST. He states that this conversation along with some DRs that he states were improperly done, were used as the basis to place him on OSR. When I was in ACH I was doing rounds when CSI Sanchez, at the time he was still on SST, come into the house and Mr. Blake called him over. Mr. Blake then asked him about the conversation they had at the hospital to which CSI Sanchez stated that his report was taken very much out of context. Later I was able to talk with COI Chiles and I asked him about that day and the narrative that he had written. COI Chiles stated to me that his narrative was indeed altered and that what the narrative stated now was not what happened. Mr. Blake also stated that his DR hearing was done is such a way that he was denied his due process. He states that he was not allowed to speak in his deference and that a staff assistance was assigned to him. Though this is allowed in the rules he does not believe the staff assistance as allowed to properly defend him. Furthermore, he states that his staff assistance never contacted him to discuss how he wanted them to handle his hearing. Though I have not been able to investigate further into how exactly his DR hearing was handled, the conversation with both Sanchez and Chiles I can confirm as I was there for both. From what I have been able to gather form my limited investigation there does seem to be some improper handling of Mr. Blakes DR hearing, as well as altered documentation regarding Mr. Blake's stay at the hospital.

Ex #15

Blake 0096323 D1-246

The Warden has your Grievances
that we talked about yesterday.
Classification Administrator Powers has
brought this to his attention.

— UTS Reeves



714 SW Jackson St, Suite 300 | Topeka, Kansas 66603
Office: 785-341-1731 | Mobile: 785-213-4131 | Fax: 785-296-6887 | Vickie.Rongaus@ks.gov

PATHWAY
for SUCCESS

From: Marsha Bee [KDOC] <Marsha.Bee@ks.gov>
Sent: Tuesday, April 13, 2021 12:12 PM
To: Vickie Rongaus [KDOC] <Vickie.Rongaus@ks.gov>
Subject: RE: ICG - Blake

This is Sheldon Blake  # 663227

From: Vickie Rongaus [KDOC] <Vickie.Rongaus@ks.gov>
Sent: Tuesday, April 13, 2021 12:07 PM
To: Marsha Bee [KDOC] <Marsha.Bee@ks.gov>
Cc: Darcie Holthaus [KDOC] <Darcie.Holthaus@ks.gov>
Subject: FW: ICG - Blake

Marsha, could you have a UT get us information requested by Maryland?

Correctional Litigation is in need of the following information from Kansas:

1. Has inmate Blake ever been placed on Administrative Segregation? If so, I need to know for how long and for what reason(s)?
2. Confirmation of whether or not inmate Blake was ever force medicated by KDOC (initial response was no, but they were going to confirm).

Vickie Rongaus | Public Service Executive
Kansas Department of Correction
714 SW Jackson St, Suite 300 | Topeka, Kansas 66603
Office: 785-341-1731 | Mobile: 785-213-4131 | Fax: 785-296-6887 | Vickie.Rongaus@ks.gov

PATHWAY
for SUCCESS

From: Patricia Smith -DPSCS- <patricia.smith02@maryland.gov>
Sent: Tuesday, April 13, 2021 12:04 PM
To: Darcie Holthaus [KDOC] <Darcie.Holthaus@ks.gov>
Cc: Vickie Rongaus [KDOC] <Vickie.Rongaus@ks.gov>
Subject: Fwd: ICG - Blake

EXTERNAL: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

FYI

Patricia Smith
Case Management Specialist
Case Management -MPCC
Department of Public Safety and Correctional Services
8714 Hubner town Road
Baltimore, MD 21216

Exhibit 16

Exhibit  N

4/14/2021                                      State of Maryland Mail - Fwd: FW: FW: ICC - Blake 95323

![Maryland logo]
Maryland                                       Kristina Donnelly -DPSCS- <kristina.donnelly@maryland.gov>

**Fwd: FW: FW: ICC - Blake 95323**
1 message

Patricia Smith -DPSCS- <patricia.smith3@maryland.gov>                    Tue, Apr 13, 2021 at 4:54 PM
To: Kristina Donnelly -DPSCS- <kristina.donnelly@maryland.gov>

FYI

[changing_maryland_logo.jpg]

Public Safety Online          Patricia Smith
Twitter  Facebook             Case Management Specialist
Take our customer Service Survey  Case Management -RPOC
                              Department of Public Safety and Correctional Services
                              6776 Reisterstown Road
                              Baltimore, MD 21215
                              410.585.3703 - office
                              410.206.8105 - fax
                              Patricia.Smith3@maryland.gov

---------- Forwarded message ----------
From: Vickie Brungardt [KDOC] <Vickie.Brungardt@ks.gov>
Date: Tue, Apr 13, 2021 at 3:26 PM
Subject: FW: FW: ICC - Blake 95323
To: Patricia Smith - DPSCS- <patricia.smith3@maryland.gov>

When it has PHD below is Admin Seg.

Vickie Brungardt | Public Service Executive
Kansas Department of Corrections
714 SW Jackson St, Suite 300 | Topeka, Kansas 66603
Office: 785-746-7573 | Mobile: 785-313-4351 | Fax: 785-296-6237 | Vickie.Brungardt@ks.gov

![Pathway to Success logo]
PATHWAY
to SUCCESS

From: Marsha Bee [KDOC] <Marsha.Bee@ks.gov>
Sent: Tuesday, April 13, 2021 2:07 PM
To: Vickie Brungardt [KDOC] <Vickie.Brungardt@ks.gov>
Subject: RE: FW: ICC - Blake 95323

①Consistent Bad Behavior

While at EDCF- he was GP upon transfer from LCF on 7/30/19.

On 1/06/20- we had him sent to GP

6/16/2020-he went PHD — Pre-hearing detention

6/23/2020- back to GP

8/14/2020-DS- When he went out to the hospital and then to LCF is when he made these statements about making things happen..... we changed him in CSM.

While at LCF                                    Other Security Risk

12/23/16- PHD

12/28/16 - GP

1/20/18- PHD

3/5/18- GP

3/6/18- PHD

3/8/18- GP

https://mail.google.com/mail/u/0?ik=34e5a9ca0a3&view=pt&search=all&permthid=thread-f%3A1698947724204170378%7Cmsg-f%3A1698949044212133...    1/6

# Exhibit  10

Twitter Facebook          PatriciaA.Smith2@maryland.gov
Take our customer Service Survey

--------- Forwarded message ---------
From: Vickie Brungardt [KDOC] <Vickie.Brungardt@ks.gov>
Date: Tue, Apr 13, 2021 at 1:19 PM
Subject: FW: ICC - Blake 96323
To: Patricia Smith -DPSCS- <patricia.smith2@maryland.gov>
Cc: Darcie Holthaus [KDOC] <Darcie.Holthaus@ks.gov>

Review information provided below from the facility.

Vickie Brungardt | Public Service Executive
Kansas Department of Corrections
714 SW Jackson St, Suite 300 | Topeka, Kansas 66603
Office: 785-746-7573 | Mobile: 785-313-4551 | Fax: 785-296-0087 | Vickie.Brungardt@ks.gov

PATHWAY
for SUCCESS

From: Marsha Bos [KDOC] <Marsha.Bos@ks.gov>
Sent: Tuesday, April 13, 2021 12:16 PM
To: Vickie Brungardt [KDOC] <Vickie.Brungardt@ks.gov>
Subject: RE: ICC - Blake 96323

Yes he is currently in RHU. He was placed in RHU on 8/14/2020

These are the placement facts:

Fact: On 8/14/2020, offender Blake, Shidon #96323, was placed in Administrative Segregation to serve Disciplinary Segregation for DRs he received on 8/04/2020 #099 Dangerous Contraband (brown leafy substance–45 days DS)✓, 7/16/2020 #298 Dangerous Contraband (razor blades & altered glue); 7/16/2020 #287 Dangerous Contraband – 45 days; 7/16/2020 #204 (Being Drunk, Intox, Altered State of Consciousness) 45 days & Dangerous Contraband – 45 days. Offender has a very lengthy DR history. He has made numerous threats to staff and has received 3 DRs for threatening/intimidating staff during his current incarceration. In addition, on a daily basis, offend makes sarcatic and aggressive statements toward and regarding staff. Specifically, during a recent off-site transport, offender stated staff were "messing with him" and if staff didn't leave him alone, he is going to "make shit happen." Offender Blake has also stated that he is the only inmate who can "unite the entire compound regardless of gang affiliations: There will be war." He also stated "if anyone touches me they will fucking die. My guys will pull up on their house." Offender Blake also claims to have a great authority within the Bloods and a Jamaican gang (no name given). Offender stated they will come over whenever he needs them and will take care of the "problems." Each time he mentions this Jamaican People" his accent changes. Offender also commented that his brother is one of the most powerful men in Jamaica, but is now incarcerated. As a result of the actions and statements made by offender Blake, Shidon #96323, it is necessary for the safety and security of the El Dorado Correctional Facility, that he is placed on Admin Segregation on Other Security Risk status.

Just checked w/ medical and he has never been force medicated.

From: Vickie Brungardt [KDOC] <Vickie.Brungardt@ks.gov>
Sent: Tuesday, April 13, 2021 12:13 PM
To: Marsha Bos [KDOC] <Marsha.Bos@ks.gov>
Subject: RE: ICC - Blake 96323

Yes sorry about that usually get their numbers in the subject line.

Vickie Brungardt | Public Service Executive
Kansas Department of Corrections

# Exhibit 11

Exhibit 


**Maryland**

Patricia Smith -DPSCS- <patricia.smith2@maryland.gov>

## FW: BLAKE, SHIDON (KDOC# 0096323)
1 message

**Doug Burris [KDOC]** <Doug.Burris@ks.gov>                          Fri, Oct 16, 2020 at 3:47 PM
To: Patricia Smith -DPSCS- <patricia.smith2@maryland.gov>

FYI,

It was a 3 way call.  Details below.

Thanks,

**Doug Burris | Corrections Manager II**
Kansas Department of Corrections
714 SW Jackson St, Suite 300 | Topeka, Kansas 66603
Office: 785-746-7501 | Mobile: 785-559-0590 |  Doug.Burris@ks.gov


**Kansas**
Department of Corrections

**From:** Marcelle Chmidling [KDOC] <Marcelle.Chmidling@ks.gov>
**Sent:** Friday, October 16, 2020 2:43 PM
**To:** Doug Burris [KDOC] <Doug.Burris@ks.gov>
**Subject:** FW: BLAKE, SHIDON (KDOC# 0096323)

He was issued a disciplinary report for the 3-way call and his phone privileges with the person that helped him with the call were suspended for (90) days.

**From:** Tom OBrien [KDOC] <Tom.OBrien@ks.gov>
**Sent:** Wednesday, October 14, 2020 3:16 PM
**To:** John Cannon2 [KDOC] <John.Cannon2@ks.gov>
**Cc:** Marcelle Chmidling [KDOC] <Marcelle.Chmidling@ks.gov>
**Subject:** RE: BLAKE, SHIDON (KDOC# 0096323)

Offender Blake called telephone # (240) 979-6175 (*CSN: 217124262*) on 10/14/2020 staring at 09:57:21 with a call duration of 34 minutes.

The telephone number (240) 979-6175 is listed on the offender's approved calling list as, B. Candice, Wife. ICS shows this number was approved by "Scheidleberg" on 07/08/2020 at 11:00:45.

At 1 minute, 33 seconds into the call, offender Blake said to the call recipient, *"I need you to pull up on Patricia Smith, man."*

Exhibit 

Exhibit 19B cont.

At 3 minutes, 06 seconds into the call, offender Blake began to sing, presumably in an effort to camouflage the sound of the call recipient dialing for a 3 way call.

At 3 minutes, 49 seconds into the call, Ms. Smith answered the call and offender Blake claimed, *"This is one of the most urgent calls ever."* He eventually identified himself a Sidon Blake.

Once Ms. Smith figured out who was calling and where he was calling from, she advised Blake, *"Well, first of all, you're not allowed to do that."*

 Offender Blake went on to claim that KDOC is keep information from Smith, that he had been forcefully injected with morphine and fentanyl. He claimed he has complained to Doug Burris, KDOC headquarters and the Warden. He said he had been physically restrained in a restraint chair and forcefully injected because, *"...they said I was having a stroke."* He went on to allege, *"They done admitted the medication was wrong that I was on that caused me to have these situations before."*

Blake also complained that he was being housed in a COVID-19 unit.

 Blake said his issues began after *"his books were banned"*. He claimed he has file grievances and has since suffered retaliation in the form of federal tampering and witness intimidation and conviction of 6 disciplinary infractions without having hearings. Blake also alleged, *"I done been attacked twice because of this."*

Administration is a problem for him and he can't handle it. I need to be away from these people.

The 3 way portion of this call ended at 13 minutes, 03 seconds into the call.

I was able to confirm that Blake has filed 10 grievances while housed at EDCF and has written 2 lengthy letters to EDCF, Warden Cline. The complaints levied in these documents include 'bogus' disciplinary hearings, staff violation of IMPP 02-118, loss of day room, misplaced mail, legal mail procedures, CBB placement, cruel and unusual treatment, 23 hour confinement, not getting the proper soap, staff making inappropriate jokes, demanding a psych eval on the hearing officer, and claim that DR appeals were not processed.

I have contacted Centurion for information pertaining to offender Blakes allegations against medical staff and am currently waiting for them to return my call. I do recall offender Blake *(and another neighboring offender)* did exhibit stroke like symptoms requiring a trip to the clinic. This is believed to have been caused by the consumption of synthetic cannabinoids.

 Centurion documents that offender Blake has a serious mental disorder and is listed as a Mental Health Level 4,4,3.

This is all the information I have at this time.

T. K. O'Brian
Special Agent / Security Threat Group Intelligence Officer
Enforcement, Apprehension and Investigations Division
<< OLE Object: Picture    Kansas Department of Corrections
(Device Independent    Cell: 316.495.1458
Bitmap) >>    Office: 316.322.2012
Tom.OBrian@ks.gov

 NOTICE-CONFIDENTIAL: This message and any attached files, in their entirety, are intended for the use of the individual and/or entity referenced above and may contain information that is privileged, confidential, and/or exempt from disclosure by applicable law or court order. If the reader of this message is not the intended recipient, please notify the sender via the most expedient means available (contact

\* review in its entirety \*

Exhibit 13 cont.

EX 30

DP-246

**KDOC_court_file_edcf**

| | |
|---|---|
| **From:** | KSD_CMECF@ksd.uscourts.gov |
| **Sent:** | Tuesday, June 21, 2022 11:39 PM |
| **To:** | ksd_nef@ksd.uscourts.gov |
| **Subject:** | Activity in Case 5:21-cv-03046-SAC Blake (ID 96323) v. Wallace et al Martinez Report |

*EXTERNAL*: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**DISTRICT OF KANSAS**

**Notice of Electronic Filing**

The following transaction was entered by Oyler, Jocilyn on 6/21/2022 at 11:38 PM CDT and filed on 6/21/2022

| | |
|---|---|
| **Case Name:** | Blake (ID 96323) v. Wallace et al |
| **Case Number:** | 5:21-cv-03046-SAC |
| **Filer:** | Kansas Department of Corrections |
| **Document Number:** | 28 |

**Docket Text:**
**MARTINEZ REPORT by Interested Party Kansas Department of Corrections re [1] Complaint. (Attachments: # (1) Exhibit, # (2) Exhibit, # (3) Exhibit, # (4) Exhibit, # (5) Exhibit)(Oyler, Jocilyn)**

**5:21-cv-03046-SAC Notice has been electronically mailed to:**

Jocilyn Oyler    jocilyn.oyler1@ks.gov, christina.taylor@ks.gov

John Russell Hicks    jh@nkfirm.com

Natasha M. Carter    natasha.carter@ks.gov

Samuel Patrick Bennett    sbennett@nkfirm.com

Shaidon Blake    KDOC_court_file_edcf@ks.gov

**5:21-cv-03046-SAC Notice has been delivered by other means to:**

1

Exhibit A



Exhibit 4-25

Exhibit 4-23



Exhibit 4-23



Attachment B, IMPP 11-119
Effective: 12-11-13

# DISCIPLINARY REPORT

_____EDCF_____
(FACILITY)

| | | | |
|---|---|---|---|
| Case No: 20-10-263 | | | |
| | Date of Alleged Violation: 10/14/2020 | Time: 0957 | A.M. / P.M. |
| | Date This Report Written: 10/15/2020 | Time: 0930 | A.M. / P.M. |

Name of Inmate: Blake _____ Shidon _____ No. __96323__ Cell No: A1-116_____
LAST          FIRST         MI

Duty Assignment: Admin. Seg. _____

**Alleged Violation of Law or Rule** (Identify by Code No., Short Title, and Class) _44-12-211 a (2)(4) Telephone or other_
communication devices, Class1.

## THIS REPORT IS BEING WRITTEN AT THE CONCLUSION OF AN EAI INVESTIGATION

FACTS:  : Offender Blake #96323 made a phone call to 240-979-6175 on 10/14/2020 at approximately 0957 hours using the phone located in A1-116 at EDCF, where offender Blake resides. This number is listed on his approved phone list as B. Candice, (Wife). While Blake was conversing with Ms. Candice, he asked her *I need you to pull up on Patricia Smith, man.* A few minutes later the call was merged with Ms. Smith who answers the call where offender Blake claimed ""*This is one of the most urgent calls ever.*" He eventually identified himself a Sidon Blake. Offender Blake goes on to tell Ms. Smith all the grievances he has against the KDOC.

It is a violation of 44-12-112a (2)(4), to be a party to call forwarding or to participate in any call involving a party at a phone number other than that originally called. Including receiving information relayed by an intermediary, and either relaying or receiving information over any telephone service other than that authorized by the secretary of corrections for offender usage. Therefore, I charge offender **Blake #96323** for violating IMPP 44-12-112 (a)(2)(4) Telephone or other communication devices, be a party to call forwarding. Class1.

(Attach Additional Sheet(s) if necessary)
Staff Witnesses:_____ (Signature) _____
_____ J. Travnicek
_____ Printed Name and Title of Employee Writing Report
/Approved by: _____
(Shift Supervisor, Unit Team Manager & Title)

| |
|---|
| I declare (or verify, certify or state) under penalty of perjury that the foregoing is true and correct. |
| Executed on __10/15/2020__       Signature _____ |

| |
|---|
| I received a copy of this report on _____, _____, _____ |
|            (Date)     (Time)       (Inmate Signature & No) |
| I served a copy of this report _____, _____, _____ |
|            (Date)     (Time)   (Signature of Officer or Unit Team Manager & Title) |

| |
|---|
| *Technical and clerical errors in the writing and / or processing of the Disciplinary report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to provide. Pursuit to K.A.R. 44-13-707. Harmless error; Plain error.* |

Exhibit ~~██████~~ 24

## DISPOSITION OF DISCIPLINARY CASE

| INMATE NAME & NO  # BLAKE, SHIDON    #96323 | CASE NO. 20-07-263 |
|---|---|

*TESTIMONY*

07/27/2020 0503 hrs.

Offender sworn in.

R/o sworn in.

H/o: Do you believe offender Blake was under the influence of something?

R/o: Yes.

H/o: What were his symptoms that led you to believe this?

R/o: When I approached them, not only did he have a hand rolled cigarette devise in his hand, but he dropped the one hitter, then Picked it up and gave it to me when I asked for it. He was stumbling and slurring his speech. He made no coherent sentences.

Offender: Did you wake me up out of my sleep?

R/o: No.

Offender: Where did you find the one hitters?

R/o: In the trash can.

H/o: When he walked up to the room, did you have a one hitter in your hand?

Offender: No, he woke me up out my sleep.

H/o: What about the sand paper?

Offender: What sandpaper?

H/o: What about the fan and lamp?

Offender: Lt. Johnson gave me those just the other day. I want them back.

Offender is requesting to have the evidence tested.

E-mail sent to EAI.

Offender states the nitro pills are his and he has a prescription for them.

No further questions for the R/o.

H/o contacts Nurse Moore in the clinic who has verified offender has had a prescription for nitro pills since 06/19.

Offender has been found not guilty on the 312 charge.

Case continued.

08/04/2020 1016 hrs.

Offender sworn in.

Offender informed the evidence has come back from EAI tested positive for synthetic cannabinoids.

Case has been continued.

08/11/2020 1113 hrs.

Offender sworn in.

Offender has nothing further to add.

Offender is now requesting to question CSI Gorman.

Case continued to question CSI Gorman.



08/17/2020 0932 hrs.

Offender has made disrespectful comments towards R/o and had been warned several times but continued the comments.

He had been warned multiple times to stop but continued then hung up phone.

Hearings are now in absentia.

Staff assistance will be assigned.

Case continued.

08/18/2020

Staff assistance assigned is Unit Team Knapp and sworn in.

Unit Team Knapp has no questions or witnesses to call.

It is more likely than not this offender did commit the violations of 203, 311, 901 and 903, based on preponderance of evidence,

And therefore has been found guilty.

Page 2 of 3, Attachment L, IMPP 11-119
Effective: 12-11-13

Exhibit ~~██ ██~~

Exhibit 🖊 24 (con't)

| INMATE NAME & NO  # 96323   BLAKE, SHIDON | CASE NO. 20-07-263 |
|---|---|

☐ Witness(es) Sworn In/Affirmed

_____  _____  _____

_____  _____  _____

**Witness(es) Testimony / Cross Examination (Attach Testimony)**

**Closing Statement(s):  (Attach Arguments)**

**If applicable include inmate's testimony/ arguments on restitution**

Sanction(s):   203-60 Days Rest., $10.00 Fine C.S. Imposed
_____311-60 Days Rest., $10.00 Fine C.S. Imposed
_____312-Not Guilty
_____901-45 Days D/S, 60 Days Rest., $20.00 Fine C.S. Imposed
_____903-30 Days Rest., $5.00 Fine C.S. Imposed
_____Re-Impose case #20-03-780 90 Days Rest. C.S. Imposed
Reason for Sanctions:          Sentence Guidelines

Disposition of Evidence:  return lamp, fan and pills to offenders, rest hold 90 days then destroy_____

☒  Inmate advised of right to Appeal,  Inmate Initial _____Advised_____

| HEARING OFFICER SIGNATURE   CSI Randolph | DATE:  08/18/2020 |
|---|---|

FINAL ACTION BY FACILITY WARDEN:
☑ APPROVED
☐ REINSTATE DISMISSED CHARGES; REMAND NEW HEARING
☐ AMEND THE CHARGE
☐ DISAPPROVE/DISMISS
☐ REDUCE THE PENALTY
☐ SUSPEND ALL OR PART OF SENTENCE
☐ REMAND NEW HEARING
☐ CLARIFICATION OF RECORD

☐ REDUCE TO SUMMARY JUDGMENT
- restriction from privileges up to 10 days
- fine not to exceed $10.00
- extra work w/o incentive pay for no more than 2 hrs/day no more than 5 days
- work w/o incentive pay not to exceed 5 days
- restitution not less than $3.00 or more than $20.00

Comments: _____

_____          8/21/2
WARDEN/DESIGNEE SIGNATURE               DATE

I received a Copy of the Hearing Record and understand I have 15 days to Appeal this decision.

_____          8/25/2020
INMATE SIGNATURE                        DATE

I served a copy of the Hearing Record

_____          8/25/2020
STAFF SIGNATURE                         DATE

Technical and clerical errors in the writing and/or processing of the Disciplinary Report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to prove. Pursuit to K.A.R 44-13-707. Harmless error; Plain error.

Exhibit 

Exhibit ▲ ▬▬-▬ 2ᵇ



## DISPOSITION OF DISCIPLINARY CASE

| INMATE NAME & NO  # BLAKE, SHIDON    #96323 | CASE NO.  20-07-267 |
|---|---|

### TESTIMONY

| |
|---|
| 08/17/2020 0932 hrs. |
| Offender has made disrespectful comments towards R/o and had been warned several times but continued the comments. |
| He had been warned multiple times to stop but continued then hung up phone. |
| Hearings are now in absentia. |
| Staff assistance will be assigned. |
| e-mail sent to R/o. |
| Case continued. |
| |
| 08/18/2020 |
| Staff assistance assigned is Unit Team Knapp and sworn in. |
| Unit Team Knapp has no questions or witnesses to call. |
| Case continued for R/o. |
| |
| 08/23/2020 |
| E-mail received from R/o stating her report is both accurate and true. |
| UTS Knapp states he nor the offender wish to add anything. |
| |
| Offender found in violation of altered state of consciousness, dangerous and tobacco contrabands due to a preponderance of |
| Evidence. This H/o believes the offender was aware and in possession of a leafy substance which is presumed to be an illicit |
| illegal substance with mind altering affects. The offender was in an altered state of consciousness after he had consumed this |
| illegal substance. The offender was also aware and in possession of smoking paraphernalia in the form of burnt pencil lead and |
| Melted outlets' indicating he was using the electrical outlet as an improvised lighter. The offender was also in possession of stolen |
| Electronic items and photos that contained pornographic imagery. No witness list. |

Page 2 of 3, Attachment L, IMPP 11-119
Effective: 12-11-13



Exhibit  25. con

A2-149

| INMATE NAME & NO  # 96323   BLAKE, SHIDON | CASE NO. 20-07-267 |
|---|---|

☐ Witness(es) Sworn In/Affirmed _____ _____

Witness(es) Testimony / Cross Examination (Attach Testimony)

Closing Statement(s):  (Attach Arguments)
If applicable include inmate's testimony/ arguments on restitution

Sanction(s):   901- 45 days D.S. 60 days rest. $20.00 fine C.S. imposed
803- 60 days rest. $10.00 fine C.S. imposed
203- 60 days rest. $20.00 fine C.S. imposed
313- $5.00 fine C.S. imposed
311- 60 days rest. $20.00 fine C.S. imposed
Reason for Sanctions: _____ Sentence Guidelines

Disposition of Evidence: _____ Hold for appeals / Destroy

☒ Inmate advised of right to Appeal.  Inmate Initial ____ Advised

HEARING OFFICER SIGNATURE ____ Lt. Johnson, A.J. ____ DATE: 08/23/2020

FINAL ACTION BY FACILITY WARDEN:
☐ APPROVED
☐ REINSTATE DISMISSED CHARGES; REMAND NEW HEARING
☐ AMEND THE CHARGE
☐ DISAPPROVE/DISMISS
☐ REDUCE THE PENALTY
☐ SUSPEND ALL OR PART OF SENTENCE
☐ REMAND NEW HEARING
☐ CLARIFICATION OF RECORD

☐ REDUCE TO SUMMARY JUDGMENT
- restriction from privileges up to 10 days
- fine not to exceed $10.00
- extra work w/o incentive pay for no more than 2 hrs/day no more than 5 days
- work w/o incentive pay not to exceed 5 days
- restitution not less than $3.00 or more than $20.00

Comments: _____

_____          8/31/20
WARDEN/DESIGNEE SIGNATURE          DATE

I received a Copy of the Hearing Record and understand I have 15 days to Appeal this decision.
Refused to sign                     9-8-2020
INMATE SIGNATURE                    DATE

I served a copy of the Hearing Record
Cell 22                             9-8-202
STAFF SIGNATURE                     DATE

Technical and clerical errors in the writing and/or processing of the Disciplinary Report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to prove. Pursuit to K.A.R 44-13-707. Harmless error, Plain error.

Exhibit 🖤 🖤-🖤 26



## DISPOSITION OF DISCIPLINARY CASE

| INMATE NAME & NO  # BLAKE, SHIDON   #96323 | CASE NO. 20-08-069 |
|---|---|

### TESTIMONY

08/17/2020 0932 hrs.
Offender sworn in.
Offender enters a plea of not guilty.
Offender states he submitted a witness list, no list in file.
Offender is requesting to question the R/o.
Offender: She lying.
Offender has made disrespectful comments towards R/o and has now been warned several times but continues the comments.
H/o has repeatedly asked offender to provide his defense, but will not say anything except disrespectful comments about R/o.
Offender has now hung up the phone.
Hearings are now in absentia.
Staff assistance will be assigned.
e-mail sent to R/o.
Case continued.

08/18/2020
Received e-mail from R/o report stands as written.
Staff assistance assigned is Unit Team Knapp and sworn in.
Unit Team Knapp has no questions or witnesses to call.
It is more likely than not this offender did commit the violations of 304, 901 and 903, based on preponderance of evidence, and
Therefore has been found guilty.

Page 2 of 3, Attachment L, IMPP 11-119
Effective: 12-11-13

Exhibit 🖤🖤-🖤


Exhibit 

| INMATE NAME & NO  # 96323   BLAKE, SHIDON | CASE NO. 20-08-069 |
|---|---|

☐ Witness(es) Sworn In/Affirmed   _____   _____

_____   _____   _____

**Witness(es) Testimony / Cross Examination (Attach Testimony)**

**Closing Statement(s):  (Attach Arguments)**

**If applicable include inmate's testimony/ arguments on restitution**

Sanction(s):   304- 60 Days Rest., $15.00 Fine C.S. Imposed
901- 45 Days D/S, 60 Days Rest., $20.00 Fine C.S. Imposed
903-60 Days Rest., $5.00 Fine C.S. Imposed

Reason for Sanctions:   _____ Sentence Guidelines _____

Disposition of Evidence: _____ hold for 90 days then destroy _____

☒ Inmate advised of right to Appeal,  Inmate Initial   _____ Advised _____

HEARING OFFICER SIGNATURE   CSI Randolph   DATE: 08/18/2020

**FINAL ACTION BY FACILITY WARDEN:**
☑ APPROVED                                          ☐ REDUCE TO SUMMARY JUDGMENT
☐ REINSTATE DISMISSED CHARGES; REMAND NEW HEARING    - restriction from privileges up to 10 days
☐ AMEND THE CHARGE                                  - fine not to exceed $10.00
☐ DISAPPROVE/DISMISS                                - extra work w/o incentive pay for no more
☐ REDUCE THE PENALTY                                  than 2 hrs/day no more than 5 days
☐ SUSPEND ALL OR PART OF SENTENCE                   - work w/o incentive pay not to exceed 5 days
☐ REMAND NEW HEARING                                - restitution not less than $3.00 or more than
☐ CLARIFICATION OF RECORD                             $20.00

Comments: _____

_____   8/21/20
WARDEN/DESIGNEE SIGNATURE   DATE

I received a Copy of the Hearing Record and understand I have 15 days to Appeal this decision.

_____   8/25/2020
INMATE SIGNATURE   DATE

I served a copy of the Hearing Record

_____   8/25/2020
STAFF SIGNATURE   DATE

Technical and clerical errors in the writing and/or processing of the Disciplinary Report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to prove. Pursuant to K.A.R 44-13-707. Harmless error; Plain error.

Exhibit 

Exhibit  21

ค.A|

## DISPOSITION OF DISCIPLINARY CASE

| INMATE NAME & NO  # BLAKE, SHIDON   #96323 | CASE NO.  20-06-163 |
|---|---|

### TESTIMONY

08/17/2020 0932 hrs.
Offender has made disrespectful comments towards R/o and had been warned several times but continued the comments.
He had been warned multiple times to stop but continued then hung up phone.
Hearings are now in absentia.
Staff assistance will be assigned.
e-mail sent to R/o.
Case continued.

08/18/2020
Received e-mail from R/o report stands as written.
Staff assistance assigned is Unit Team Knapp and sworn in.
Unit Team Knapp has no questions or witnesses to call.
It is more likely than not this offender did commit the violation of 211a, based on preponderance of evidence, and
Therefore has been found guilty.



Exhibit  27 cont

| INMATE NAME & NO  # 96323   BLAKE, SHIDON | CASE NO. 20-08-163 |
|---|---|

☐ Witness(es) Sworn In/Affirmed _____

Witness(es) Testimony / Cross Examination (Attach Testimony)

Closing Statement(s): (Attach Arguments)

If applicable include inmate's testimony/ arguments on restitution

Sanction(s):  211a - 30 Days Rest. C.S. imposed

Reason for Sanctions:  Sentence Guidelines

Disposition of Evidence:  N/A

☒ Inmate advised of right to Appeal,   Inmate Initial  Advised

| HEARING OFFICER SIGNATURE   CSI Randolph | DATE:  08/18/2020 |
|---|---|

FINAL ACTION BY FACILITY WARDEN:
☒ APPROVED
☐ REINSTATE DISMISSED CHARGES; REMAND NEW HEARING
☐ AMEND THE CHARGE
☐ DISAPPROVE/DISMISS
☐ REDUCE THE PENALTY
☐ SUSPEND ALL OR PART OF SENTENCE
☐ REMAND NEW HEARING
☐ CLARIFICATION OF RECORD

☐ REDUCE TO SUMMARY JUDGMENT
- restitution from privileges up to 10 days
- fine not to exceed $10.00
- extra work w/o incentive pay for no more
  than 2 hrs/day no more than 5 days
- work w/o incentive pay not to exceed 5 days
- restitution not less than $3.00 or more than
  $20.00

Comments: _____

_____          8/24/2____
WARDEN/DESIGNEE SIGNATURE                 DATE

I received a copy of the Hearing Record and understand I have 15 days to Appeal this decision.

W G W                                      8/25/2020
INMATE SIGNATURE                           DATE

I served a copy of the Hearing Record

_____                            8/25/2020
STAFF SIGNATURE                            DATE

Technical and clerical errors in the writing and/or processing of the Disciplinary Report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to prove. Pursuit to K.A.R 44-13-707. Harmless error; Plain error.

Exhibit

Exhibit 28

```
1/05/2021  09:43:20  Kansas Department of Corrections          BRUNGAR
                            Current Bank Status                 BKR0021A
-----------------------------------------------------------------------
Inmate                        Incentive Level  Current Location
0096323  BLAKE,SHIDON                1         EDCF-C  DB1154
                                    Cash   Forced Savings   Mand Savings
Beginning Balance on 12/01/2020      3.41        15.84           .00
Encumbrances:                        3.25
Balance Before Obligations:           .16        15.84           .00
Other Obligations & Fees Owed:       7.00
Legal Postage and Legal Copies:      7.75
Fines & Disciplinary Rest Owed:    280.00
State/Federal Lawsuits:
Benefits Balance:
Curr Amt Available-Garn/Fees:         .00        15.84           .00
Cur Amt Avail w/ Govt Benefits:       .00        15.84           .00
                                    For    Attended    For
                                    Week   Canteen     Period
Canteen Expenditures:                .00               .00
Outgoing Funds:                      .00               .00
Handicrafts:                                           .00
Fresh Favorites:          .00                          .00
F3 = Exit F12 = Previous Screen  F4 = View Transactions F6 = View Obligations
```

DR Disp. for 28¢ missing
but same Time & Date as others
W/Randolph

Exhibit

Signed in as Kansas Department of Corrections.

Lexis® |



Document:                              COMAR 12.08.01.23

🖶  Go to ⌄      Search Document 🔍

‹ Previous                                                          Next ›

## COMAR 12.08.01.23

**Copy Citation**

This document is current through the 1/27/2023 issue of the Maryland Register

MD - Code of Maryland Regulations (COMAR)    TITLE 12. DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONAL SERVICES    SUBTITLE 08. PAROLE
COMMISSION    CHAPTER 01. GENERAL REGULATIONS

## .23 Consideration and Review.

**A.** En Banc Consideration.

**(1)** The Commission, in its discretion, may delay action relative to parole or revocation of parole at any time during a hearing to permit consideration of the case by the Commission en banc.

**(2)** A majority of all members then serving on the Commission shall constitute an en banc panel. The members of the panel and no others shall vote relative to parole or revocation. Members may abstain from voting only in the event of conflict of interest. The decision of the Commission shall be the majority vote of all the members serving on the panel.

**(3)** En banc consideration may be initiated by the administrative order of the Chairman or at the request of any two members of the Commission.

**B.** Review.

**(1)** Whenever a parole has been refused or revoked, a written request for a rehearing may be made on behalf of the inmate and shall set forth any new facts, conditions, or circumstances not previously considered by the Commission.

**(2)** The case shall be referred to the officials participating in the last decisions who, in their discretion, may schedule a rehearing, deny a rehearing, setting forth the details for denial, or schedule the case for en banc consideration.

**(3)** Any case may be reviewed at the discretion of the Commission at any time upon receipt of new information of significance relative to the possibility of parole.

**(4)** The participating officials, upon receipt of sufficiently significant information which was not known to them at the time of the parole hearing, in their absolute discretion, may:

**(a)** Advance, postpone, or deny any parole which has been granted; or

**(b)** Advance, postpone a scheduled rehearing date, or grant parole in cases where it had previously been denied.

**(5)** Denial of a granted parole before the inmate's release shall be subject to the following procedure:

**(a)** Release of the inmate shall be suspended by written notice to the institutional parole agent and to the inmate;

**(b)** At the next regularly scheduled visit of the Commission to the institution of confinement, a de nova parole hearing shall be conducted and a parole decision rendered.

**(6)** If the Governor disapproves the Commission's recommendation to parole an inmate serving a life sentence for a crime committed while younger than 18 years old, the Commission shall provide timely written notice to the inmate, and consider the inmate for parole en banc within 18 months of the date of the Governor's decision.

**(7)** In accordance with § B(6) of this regulation, the Commission shall recommend the inmate for parole unless the Commission finds good cause to deny the inmate parole.

**(8)** If the Commission denies an inmate parole under § B(7) of this regulation, the Commission shall set forth its reasoning in its written decision.

**(9)** When the Governor has disapproved the Commission's recommendation to parole an inmate serving a life sentence for a crime committed while younger than 18 years old, two parole commissioners shall, in accordance with § B(6) of this regulation:

**(a)** Ensure that the written notice of the decision is hand delivered to the inmate;

**(b)** Explain the decision to the inmate;

**(c)** Consider the inmate for an explicit recommendation to a less restrictive security level to the extent a positive adjustment at a less restrictive security level can help demonstrate parole suitability;

**(d)** Provide guidance about what the inmate can do to improve the likelihood of demonstrating suitability for parole at the next parole hearing, and provide specific recommendations as to programming or treatment, as appropriate; and

**(e)** Notify the inmate of the right to seek judicial review of the decision as permitted by law.

**C.** Sentence Imposed under Criminal Law Article, § 14-101., Annotated Code of Maryland.

**(1)** An inmate sentenced under the provisions of Criminal Law Article, § 14-101., Annotated Code of Maryland, who is at least 65 years old and has served at least 15 years of the sentence imposed may petition for and be granted parole.

**(2)** The petition shall be in writing and shall be directed to the Chairman.

**(3)** Upon receipt of the petition the Chairman, by administrative order, shall schedule a consideration of the petition by a panel of two Commissioners.

**(4)** The panel shall decide whether to grant the petitioner a parole release hearing.

**(5)** If the panel members fail to agree on granting the petitioner a parole release hearing, the Chairman shall schedule a consideration of the petition by a third member of the Commission. The opinion of the majority shall determine whether the petitioner is granted a parole release hearing.

**(6)** If the panel does not grant the petitioner a parole release hearing, the petitioner may petition the Commission after 2 years have elapsed from the denial.

**(7)** If the panel grants the petitioner a parole release hearing, the hearing shall be scheduled and conducted in accordance with Regulations .17--.19 of this chapter.

**(8)** Parole release hearings conducted under COMAR 12.08.02 shall be open to the public if the victim makes a written request to the Commission for notification when a parole release hearing is scheduled and the victim makes a written request that the parole release hearing be open to the public.